In the Matter of the Adoption of K.O., aka K.D., a minor,

v.

Helen DENISON, Petitioner and Appellant.

No. 870246–CA.

Court of Appeals of Utah.

Jan. 21, 1988.

Anne Milne, Utah Legal Services, Inc., M. David Eckersley (Argued), Houpt & Eckersley, Salt Lake City, for petitioner and appellant.

Marlin J. Grant (Argued), Olson & Hoggan, Logan, for respondents (Adoptive Parents).

Before BENCH, ORME and DAVIDSON, JJ.

OPINION

DAVIDSON, Judge:

Petitioner Helen Denison appeals from an order of summary judgment which denied a motion to set aside her grandson's adoption and also denied her motion for continuance to permit discovery.

Petitioner is the natural grandmother of the child at issue who was born on August 10, 1977. Approximately six years after the child's birth, the parental rights of the natural parents were terminated by order of the Second District Juvenile Court. After having been under the primary care of petitioner from birth until the adoption placement, the child was placed with the Division of Family Services for placement in a suitable adoptive home. On April 23, 1984, the Division of Family Services placed the child in the home of Mr. & Mrs. W (the W's) who, at that time, were residents of Cache County, Utah. On Septem-

ber 14, 1984, the W's signed but did not file a petition for adoption of the child. On October 15, 1984, petitioner filed a motion for special review with the Second District Juvenile Court, Salt Lake County, requesting a review of the "placement and potential adoption" of the child and further that she be "a party to any adoption proceeding" to insure that "promises" made to her concerning visitation with the child be fulfilled.

Before petitioner's motion was ruled on, the W's filed the previously signed petition for adoption with the First District Court, Cache County; the filing taking place on November 8, 1984. The adoption proceeding was heard on November 26, 1984. Present before the court were the W's, the child, and a representative of the Division of Family Services from whom petitioner later obtained an affidavit. The order and decree of adoption recorded the following findings:

1. That petitioners [the W's] maintain residence now and have been for more than one year past been [sic] residents of Cache County, Utah.

. . . .

13. That the said petitioners do not know of any living relative of said minor child to whom notice of these proceedings should be given.

On October 2, 1986, after trying and failing to obtain visitation with her grandson, petitioner filed with the First District Court to vacate the adoption and alleged that the W's were neither residents of Cache County nor the State of Utah at the time of filing the petition for adoption. The petition to vacate the adoption further alleged that the Division of Family Services knew the motion for special review was pending before the Second District Juvenile Court yet did not inform petitioner, the guardian ad litem, or the Salt Lake County Attorney of the pending adoption proceedings.

Service of the summons and the petition to vacate adoption was made personally on the W's in California. The W's answered and stated that the First District Court lacked jurisdiction over them as they were residents of California, that petitioner was not entitled to notice of the adoption, and that they were residents of Cache County at the time the petition for adoption was filed.

The W's filed a motion for summary judgment on February 26, 1987. In support thereof, Mr. W filed his affidavit in which he stated that "although we moved to Oregon in the latter part of 1984, we continued to maintain our home in Richmond, Cache County, Utah with the intent of returning." Mr. W continued that his wife and he "filed a petition to adopt [the child] as our own child prior to moving to Oregon on November 8, 1984." Mr. W's affidavit also states that he believes that visits by petitioner with the child were "absolutely not in [the child's] best interest." He then stated that Utah's long arm statute is inapplicable to them.

In a memorandum decision of March 9, 1987, the trial court granted the W's "motion for summary judgment of dismissal of petitioners [sic] motion to vacate." The court stated that it had jurisdiction to grant the adoption, that petitioner's claimed rights were terminated by the juvenile court's termination of parental rights, and that petitioner would have had to assert her claimed rights within a reasonable time following notice of the adoption.

On March 16, 1987, petitioner filed a motion for continuance to permit discovery on the issue of the W's residence as of November 1984. This motion was based on the affidavit of petitioner's attorney who stated that she had conversations with the Division of Family Services representative assigned to the adoption "concerning the fact that the [W's] moved to Oregon in late August or early September of 1984 to accept employment and that [the child] had been taken to Oregon to begin the school year...." Petitioner filed her objections to the proposed order, judgment, and decree on March 23, 1987. Her attorney's affidavit states that she did not receive the W's motion for summary judgment until March 2, 1987, and the memorandum decision was entered by the court on March 9, 1987. In her brief, petitioner argues that

she had 13 days to respond to the motion based on Utah R.Prac.D. & C.Ct. 2.8 and Utah R.Civ.P. 6(e) and the ruling was made two days prior to the expiration of the time provided for a response. Accompanying petitioner's memorandum in support of her objection to the proposed order, judgment, and decree is the affidavit of the Division of Family Services representative who was involved in this matter. That affidavit states:

2. When I evaluated [the child] and his placement with his maternal grandparents I was concerned that because of their advanced age and ill health, their home was not a good long-term placement for [the child].

. . . .

4. When I located [the W's] as an adoptive home I was pleased because they agreed to involve [petitioner] and [the child's sister], in the [sic] their family so that [petitioner] could maintain her contact with him.

5. I told [petitioner] that such willingness by an adoptive family to maintain contact with a birth family was rare and that this might be a unique opportunity.

6. I knew [the W's] and [the child] left Utah in September of 1984 and moved to Oregon to accept new employment.

7. I knew that both [petitioner] and [the W's] had discussed and contemplated ongoing visitation and that was one reason that the adoption was subsidized by the State of Utah, the subsidy funds of $200 per month could be used in part to pay for transportation of [the child] or [petitioner] and [the child's sister].

8. That I believed it was not appropriate to tell either [petitioner] or her attorney about the filing or pendency of the adoption proceeding.

9. Sometime after [the W's] moved to Oregon our office was unable to contact [the W's] when they moved without notifying us.

The findings of fact and conclusions of law were filed on April 1, 1987. Finding 6 records that the W's "filed a petition to adopt [the child] as their own child prior to moving to Oregon on November 8, 1984."

Finding 17 states that there was no affidavit "as to vested rights in the maternal grandmother or as to residence of the adoptive parents" submitted with the petition to vacate. The court concluded that it had jurisdiction to grant the adoption, that petitioner's claimed rights were terminated when the natural parent's rights were terminated, petitioner was not entitled to notice of the adoption, that any claimed rights should have been asserted by petitioner "within a reasonable time following her constructive and actual knowledge of the adoption," and that petitioner is now barred from asserting a claim by "laches, waiver and estoppel."

The order, judgment, and decree relative to the motion for summary judgment dismissing the petition to vacate the adoption were filed on April 1, 1987. The motion for a continuance was denied on April 27, 1987; the denial being based on the reasons set forth in the memorandum decision of March 9th. Notice of entry of judgment was filed on May 11, 1987, and this appeal followed on May 27, 1987.

In her docketing statement on appeal, petitioner raises issues which relate to the summary judgment proceeding. Because we remand we address the most relevant issues.

In *Atlas Corp. v. Clovis Nat. Bank*, 737 P.2d 225 (Utah 1987), the Utah Supreme Court addressed the issue of summary judgment stating:

Because disposition of a case by summary judgment denies the benefit of a trial on the merits, we will review the facts and inferences in the light most favorable to the party against whom the judgment was granted. If, when so [considered], we conclude that there is a dispute as to a genuine issue of material fact, we must reverse the grant of summary judgment and remand for trial on that issue. In addition, because a summary judgment is granted as a matter of law rather than fact, we are free to reappraise the trial court's legal conclusions.

*Id.* at 229 (citations omitted).

We first address the procedural defect in the summary judgment proceeding.

As noted, the W's filed their motion on February 26, 1987, with a copy mailed to petitioner's counsel. Subsequently, the trial court granted the motion on March 9, 1987. Utah R.Civ.P. 6(e) provides for an additional three days "to do some act or take some proceedings within a prescribed period after the service of a notice" if the notice is served by mail. Utah R.Prac.D. & C. Ct. 2.8(b) provides the responding party ten days with which to serve "a statement of answering points and authorities and counter-affidavits." Utah R.Civ.P. 6(a) concerns the computation of "any period of time prescribed or allowed." This Rule states that "the day of the act, event, or default from which the designated period of time begins to run shall not be included." In this case, petitioner had until the end of the day of March 11, 1987, in which to respond to the motion for summary judgment. On this basis, we set aside the judgment and remand to the trial court. *Graco Fishing & Rental Tools v. Ironwood Exp.*, 735 P.2d 62 (Utah 1987). Other issues, however, need to be addressed.

■ Critical to the validity of the adoption is adherence to the jurisdiction requirement stated in Utah Code Ann. § 78-30-7 (1987) wherein "Adoption proceedings shall be commenced by filing a petition with the clerk of the district court in the district where the person adopting resides...." The trial court, in finding of fact 5 states that the W's "moved to Oregon in the latter part of 1984...." Finding of fact 6 declares "The [W's] filed a Petition to Adopt [the child] as their own child prior to moving to Oregon on November 8, 1984." The affidavit, of the Division of Family Services representative who was present at the 1984 adoption proceeding, states that the W's and the child moved to Oregon in September 1984. This is logical when it is considered that the W's are teachers and the school year usually begins in late August or early September. If the W's were accepting new employment in Oregon, they and their family would have relocated from Utah prior to or during September. The residence of the W's, at the time they filed their petition for adoption, is clearly a genuine issue of material fact. Without know-

ing the W's residence at the critical moment, this Court cannot ascertain whether or not the trial court had jurisdiction to grant the adoption. The Utah Supreme Court in *Allen v. Greyhound Lines, Inc.*, 583 P.2d 613, 615 (Utah 1978), cited to the chapter in the Utah Code pertaining to voter registration when determining residence. Utah Code Ann. § 20-2-14 (1984) contains the following subsections:

> (f) If a person removes to another state with the intention of making it his principal place of residence, he loses his residence in this state.
>
> (g) If a person removes to another state with the intention of remaining there for an indefinite time as a place of permanent residence, he loses his residence in this state, notwithstanding he entertains an intention of returning at some future period.
>
> ....
>
> (i) A change of residence can only be made by the act of removal joined with the intent to remain in another place. There can only be one residence. A residence cannot be lost until another is gained.

It appears that the W's lost their residence in Cache County, Utah at the time they moved to Oregon with the intent to live there and teach school. This is true even though they intended, at some future moment, to return to the house they still owned in Richmond, Utah. The District Court must determine this question of fact.

■ Conclusion of law 2 states in part, "That the natural grandmother's claimed rights were terminated by the Juvenile Court's termination of parental rights and the placement of the child with the Division of Family Services for adoption and thus, was not entitled to notice of the adoption...." The Utah Supreme Court, however, has held to the contrary.

In *Wilson v. Family Services Div., Region Two*, 554 P.2d 227 (Utah 1976), the mother surrendered her child to the Division of Family Services and disclaimed rights to his custody. The grandmother sought to restrain Family Services from

placing the child for adoption until she could have a hearing on her fitness as an adoptive parent. The trial court refused stating "grandparents have no enforceable legal rights to the custody of a grandchild...." The Supreme Court held the grandmother had some inchoate right or interest in custody and welfare of children who become parentless; although not an absolute legal right, it is a legitimate interest and the court should accord the grandmother a hearing and determination on the merits of her petition.

In *State In Interest of Tom,* 556 P.2d 213 (Utah 1976), the maternal aunt and uncle of orphans were found to have standing to assert a claim to their custody because the next of kin have a "recognizable and legitimate interest in them" which courts should consider in ascertaining what is best for the orphans' welfare.

In *State In Interest of Summers v. Wulffenstein,* 616 P.2d 608 (Utah 1980), the grandmother of children, whose mother was dead and father's parental rights had been terminated, was held to have a liberty interest in the custody and welfare of her grandchildren.

In this case, the grandmother had taken care of this child since birth. This, coupled with the above case law indicates the petitioner likely had rights which should have been determined. It appears she was attempting to do that in the pending juvenile court matter. We conclude that under the facts of this case the trial court erred in making conclusion of law 2. Petitioner was entitled to notice and an opportunity to establish and enforce her rights in the child.[1]

Conclusion of law 3 states that petitioner had not asserted her claim within approximately two years of her "constructive and actual knowledge of the adoption" and that she was "barred by laches, waiver and estoppel from asserting a claim now." If the trial court on remand determines that it had no jurisdiction to hear the adoption because the W's were not residents of Cache County, Utah at the time of filing, that proceeding was void. In that case, there would be no time limit placed on an attack on this adoption proceeding. *Garcia v. Garcia,* 712 P.2d 288, 291 (Utah 1986).

This Court notes with interest the representations made to petitioner concerning the willingness of the W's to allow her to maintain contact with the child after adoption. This must be contrasted with Mr. W's affidavit in which he states such contacts would not be in the child's best interest. In addition, the affidavit refers to a request by petitioner for the W's to pay her expenses in visiting the child in Oregon and California, subsequent to the W's further relocation. The affidavit's tone is that such requests are unreasonable. However, this must also be contrasted with the affidavit of the Division of Family Services representative who declared that the State of Utah had subsidized the adoption in the amount of $200.00 per month with the expectation that such funds could be used in part for transportation costs relative to ongoing visitation for the child, petitioner, and the child's sister who remains with petitioner. If the representative's assertion is correct, an accounting should be made of the funds previously paid to determine the use made and whether such use met the needs of the child and the intent of the state.

Lastly, the trial court must determine the effect of petitioner's motion for special review pending with the Second District Juvenile Court when the adoption petition was filed.

The summary judgment is set aside and the case is remanded for trial in accordance with this opinion. Costs to appellant.

ORME and BENCH, JJ., concur.

---

1. This is not intended to establish or recognize rights in family members beyond the facts of this case. Each case must be determined on its own facts.