**2018 UT App 224**

## THE UTAH COURT OF APPEALS

IN THE MATTER OF THE ADOPTION OF B.N.A.,
A PERSON UNDER EIGHTEEN YEARS OF AGE

C.E.L.,
Appellant,
*v.*
T.L. AND A.L.,
Appellees.

Opinion
No. 20180316-CA
Filed December 6, 2018

Third District Court, Tooele Department
The Honorable Matthew Bates
No. 172300016

Karra J. Porter and Crystal Lynn Orgill,
Attorneys for Appellant

Ronald D. Wilkinson, Marianne P. Card, and
Sara Pfrommer, Attorneys for Appellees

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

HARRIS, Judge:

¶1     Utah adoption law provides that "[a]doption proceedings shall be commenced by filing a petition with the clerk of the district court . . . in the district where the prospective adoptive parent resides." Utah Code Ann. § 78B-6-105(1)(a) (LexisNexis Supp. 2018). In this case, we must determine what the consequences are, under this statute, if prospective adoptive parents file an adoption petition in the wrong district. The biological father (Father) of the child in question (Child) contends that the statute speaks to a court's subject-matter

jurisdiction, and asserts that a petition filed in the wrong district must be dismissed for lack of jurisdiction. The prospective adoptive parents (Petitioners), on the other hand, contend that the statute speaks simply to venue, and assert that when a petition is filed in the wrong district, the court has jurisdiction to continue to adjudicate the case, but must transfer the case upon request to the proper district. For the reasons set forth herein, we find Petitioners' position persuasive, and therefore affirm the district court's decision to deny Father's motion to dismiss.

BACKGROUND

¶2 In early 2014, Father engaged in a brief romantic relationship with a woman (Mother) who became pregnant and gave birth to Child in November 2014. After the relationship ended, Father asserts that he had no further communication or interaction with Mother, and therefore claims to have been unaware of Mother's pregnancy or of Child's existence until after Child was born, and unaware that he was Child's father until December 2017. It is undisputed that Father has never had any relationship with Child, who is now four years old.

¶3 In the meantime, in the spring of 2017 Mother decided to place Child for adoption, and began working with an adoption agency toward that end. The adoption agency selected Petitioners as a potential adoptive family, and Petitioners filed a petition for adoption in April 2017. Despite the fact that Petitioners reside in Utah County, part of Utah's Fourth Judicial District, they filed their petition in Tooele County, part of Utah's Third Judicial District.

¶4 Immediately after filing their petition, Petitioners asked the court to authorize a "commissioner" to take Mother's relinquishment, in accordance with Utah Code section 78B-6-124(1)(b). The court approved Petitioner's request, and signed an order appointing a representative of the adoption agency to take

Mother's relinquishment. After the order was signed, Mother met with the representative and signed a document relinquishing her parental rights to Child. One of that document's provisions stated that Mother's relinquishment was irrevocable "as to [Petitioners]," but that Mother was "not . . . consenting to the adoption of [Child] by any other person or persons." In addition, the document provided that, "[i]f [Petitioners] are unable to complete the adoption of [Child] for any reason, and the adoption petition is dismissed or denied, it is in [Child's] best interest that he be returned to [Mother's] custody and control."[1] Soon after Mother signed the relinquishment, Petitioners filed a copy of it with the court, and a few days later the court signed an order awarding temporary custody of Child to Petitioners.

¶5     Just a few months later, before the adoption was finalized, Mother filed a motion to set aside her relinquishment, asserting that she did not sign the document freely and voluntarily. The district court, after a half-day evidentiary hearing, determined that Mother had acted voluntarily and was not under duress or undue influence, and denied Mother's motion. The court's decision to deny Mother's motion is not at issue in this appeal.

¶6     About a month later, in early January 2018, Father entered an appearance in the adoption case and filed a motion seeking leave to intervene, asking that the adoption proceedings be dismissed. A few weeks later, Father filed a second motion, raising for the first time his argument—advanced here in this

---

1. This provision of the relinquishment explains why the parties are litigating about whether Utah Code section 78B-6-105(1)(a) speaks to subject-matter jurisdiction or to venue: if the statute is jurisdictional, Petitioners' petition should be dismissed, and in that event Father intends to assert that Child should be returned to Mother's custody and control.

appeal—that the district court did not have subject-matter jurisdiction over the case because Petitioners filed their petition in the wrong district.

¶7     After full briefing and oral argument, the district court denied Father's motion to dismiss, and determined that it did have subject-matter jurisdiction over the case. Father then asked for permission to appeal the district court's interlocutory order regarding jurisdiction, and we granted that request.

## ISSUE AND STANDARD OF REVIEW

¶8     The issue presented in this case is one of statutory interpretation: whether Utah Code section 78B-6-105(1)(a) acts as a limit on a district court's subject-matter jurisdiction, or is merely a venue statute. "We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." *State v. Stewart*, 2018 UT 24, ¶ 5 (quotation simplified).

## ANALYSIS

¶9     The statute in question states, in fairly straightforward language, that "[a]doption proceedings shall be commenced by filing a petition with the clerk of the district court," and that, if the prospective adoptive parent is a Utah resident, the petition is to be filed "in the district where the prospective adoptive parent resides." Utah Code Ann. § 78B-6-105(1)(a). All parties agree that this language demands that adoption proceedings be initiated by the filing of a petition. And all parties agree that, at least in adoption cases that are to be filed in district court rather than juvenile court, *see id.* § 78B-6-105(1)(c), and in which the prospective adoptive parent is a Utah resident, *see id.* § 78B-6-105(1)(a), this petition is supposed to be filed in the district

where the prospective adoptive parent resides. On these points, the language appears plain and unambiguous.

¶10     The statute is not as plain, however, when it comes to setting forth the consequences that attach when a petitioner files an adoption petition in the wrong judicial district.[2] Father asserts that a petition filed in the wrong district must be dismissed, because he reads the statute as speaking to a court's subject-matter jurisdiction to adjudicate the case. Petitioners, on the other hand, point out that any Utah district court has subject-matter jurisdiction over adoption cases as a class, and read the statute as a venue provision that does not implicate a court's jurisdiction, but merely allows any party to request that the petition be transferred to the proper district. To resolve this dispute, we start by examining the concept of subject-matter jurisdiction, and then return to a further examination of the text of the statute.

---

2. Father emphasizes the statute's use of the word "shall," which is usually interpreted as a mandatory command, *see* Utah Code Ann. § 68-3-12(1)(j) (LexisNexis 2016) (defining "shall" as meaning "that an action is required or mandatory"), and argues that adoption petitioners are commanded to file their adoption petition in the proper district. This argument is correct, as far as it goes, but the legislature's use of the word "shall," in this context, fails to answer the question at the center of this dispute because it tells us nothing about what the intended consequences are for filing the petition in the wrong place. Indeed, this case nicely illustrates one reason why some legal scholars have noted that the word "shall" is "a semantic mess": because "a recurrent issue in the huge constellation of *shall-must* holdings" concerns "the effect of failing to honor a mandatory provision's terms," which presents "an issue for a treatise on remedies, not interpretation." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 113, 115 (2012).

¶11  "The notion of 'jurisdiction' is a slippery one." *In re adoption of B.B.*, 2017 UT 59, ¶ 125, 417 P.3d 1. The word "jurisdiction" means "different things in different circumstances." *Id.* Sometimes, it is used to refer to "the scope of a court's power to issue a certain form of relief," while at other times the word is used to refer to "the territorial authority of the court that issues a decision," but "neither of these notions of jurisdiction goes to a court's *subject-matter* jurisdiction." *Id.* ¶¶ 125–27.

¶12  Subject-matter jurisdiction is a "special" type of jurisdictional concept, one that is "distinct from other notions of jurisdiction in that we require our courts to consider such issues *sua sponte*" and, unlike other notions of jurisdiction, we "do not allow the parties to waive or forfeit [subject-matter jurisdiction] from consideration." *Id.* ¶ 128. This distinction is "crucial," because "[i]f an issue is subject-matter jurisdictional, the general rules of finality and preservation are off the table," and that can "undermine the premises of efficiency, speedy resolution, and finality that generally undergird our justice system." *Id.*

¶13  Because subject-matter jurisdiction is "special" and "distinct" from other jurisdictional concepts, *see id.*, due to the fact that "parties can raise subject matter jurisdiction at any time during a proceeding, it makes sense to cabin the issues that fall under the category of subject matter jurisdiction," *Johnson v. Johnson*, 2010 UT 28, ¶ 10, 234 P.3d 1100; *see also In re adoption of B.B.*, 2017 UT 59, ¶ 129 (stating that "our law has been careful to cabin the notion of subject-matter jurisdiction"). In recent years, our supreme court has made a concerted effort to do just that, "routinely rebuff[ing] attempts by litigants to recast merits arguments as issues of subject-matter jurisdiction," and instructing trial courts that they must "guard[] against the *faux* elevation of a court's failure to comply with the requirements for exercising its authority to the same level of gravity as a lack of subject matter jurisdiction." *In re adoption of B.B.*, 2017 UT 59,

¶ 130 n.14 (quotation simplified); *see also Johnson*, 2010 UT 28, ¶ 9 (stating that "[t]he concept of subject matter jurisdiction does not embrace all cases where the court's competence is at issue," and that "[w]here the court has jurisdiction over the class of case involved, judgment is not void on the ground that the right involved in the suit did not embrace the relief granted"); *Chen v. Stewart*, 2004 UT 82, ¶ 36, 100 P.3d 1177 (determining that the parties mischaracterized their claim as one grounded in subject-matter jurisdiction in a futile attempt to avoid waiver), *abrogated on other grounds by State v. Nielsen*, 2014 UT 10, 326 P.3d 645. In *Johnson*, for instance, the court held that a district court had subject-matter jurisdiction over a divorce case, even though the parties were never actually legally married to begin with, because subject-matter jurisdiction is generally determined by reference to a "class of cases, rather than the specifics of an individual case." *Johnson*, 2010 UT 28, ¶ 10. "Because the district court clearly has the authority to adjudicate divorces, looking to the specific facts of a particular case is inconsistent with our usual definition of subject matter jurisdiction." *Id.* ¶ 12.

¶14    In fact, our supreme court has limited the concept of subject-matter jurisdiction to two specific situations: "(a) statutory limits on the authority of the court to adjudicate a class of cases," and "(b) timing and other limits on the justiciability of the proceeding before the court (such as standing, ripeness, and mootness)." *In re adoption of B.B.*, 2017 UT 59, ¶ 121 (quotation simplified); *see also id.* ¶ 153 (stating that "[o]ur law has long assessed subject-matter jurisdiction at the categorical level—encompassing only statutory limits on the classes of cases to be decided by the court and traditional limits on justiciability"). Neither of these situations is present here.

¶15    Starting with the second category first, Father does not assert that any of the common "justiciability" doctrines apply here, and therefore we need not analyze the potential applicability of any of those doctrines to the facts of this case.

¶16    And with regard to the first category, the text of the statute in question contains no express "limits" on the authority of Utah district courts to adjudicate adoption cases generally, as a class. Even Father wisely concedes that "[d]istrict courts may generally handle adoptions." Indeed, "in Utah our district courts are courts of general jurisdiction" that have "general power to hear 'all matters civil and criminal' so long as they are 'not excepted in the Utah Constitution and not prohibited by law.'" *Id.* ¶ 143 (quoting Utah Code section 78A-5-102(1)). More specifically, as concerns adoption cases, our supreme court has noted that "Utah district courts clearly have subject matter jurisdiction over adoption proceedings as a class of cases." *In re adoption of Baby E.Z.*, 2011 UT 38, ¶ 34, 266 P.3d 702; *see also In re adoption of B.B.*, 2017 UT 59, ¶ 137 (stating that, "[b]y statute, our Utah courts are expressly authorized to assume jurisdiction over adoption petitions").

¶17    When the legislature intends to place a statutory limit on a district court's jurisdictional ability to hear a category of cases, it certainly knows how to do so expressly. *See In re adoption of B.B.*, 2017 UT 59, ¶ 143 (stating that "[t]he code . . . places certain restrictions on the jurisdiction of our district courts," but that such restrictions "are expressly denominated as such—as jurisdictional limits"). For instance, the legislature will identify certain claims as within the "exclusive jurisdiction" of an administrative agency or of a particular type of court, *see, e.g.,* Utah Code Ann. § 34A-2-407(12)(a)–(b) (LexisNexis Supp. 2018) (identifying claims within the "exclusive jurisdiction" of the Labor Commission); *id.* § 78A-6-103(2) (Supp. 2018) (identifying the "exclusive jurisdiction" of juvenile courts over certain matters), or will note that "no court has jurisdiction" to entertain certain actions, *see, e.g., id.* § 31A-27a-105(1)(b) (2017) (stating that "[n]o court has jurisdiction to entertain, hear, or determine a delinquency proceeding commenced by any person other than the commissioner of this state"). The subsection of the statute at issue here has no such express limitation on jurisdiction. *See id.*

§ 78B-6-105(1)(a).[3] It does not identify adoption cases as within the "exclusive jurisdiction" of the judicial district in which the prospective adoptive parent resides, nor does it state that "no

---

3. Father points out that subsection (1)(c) of the statute appears to be jurisdictional, in that it places some adoption cases within the exclusive jurisdiction of the juvenile court, and infers therefrom that the other subsections must therefore also be jurisdictional. Father is arguably correct that subsection (1)(c) speaks to a juvenile court's subject-matter jurisdiction—that provision states that adoption proceedings "shall be commenced by filing a petition" in "juvenile court as provided in Subsection 78A-6-103(1)." *See* Utah Code Ann. § 78B-6-105(1)(c) (LexisNexis Supp. 2018). The referenced section of the Juvenile Court Act states that "the juvenile court has exclusive original jurisdiction" over "adoptions" in cases where "the juvenile court has previously entered an order terminating the rights of a parent and finds that adoption is in the best interest of the child." *See id.* § 78A-6-103(1)(o) (Supp. 2018). This language does appear to encompass express limits on the authority of courts other than juvenile courts to hear a particular sub-class of adoption cases. However, it does not follow that, just because subsection (c) is jurisdictional, subsections (a) and (b) must also be jurisdictional. On this issue, the title of the statute provides helpful guidance, instructing us that the statute concerns itself with "[d]istrict court venue" but with "[j]urisdiction of juvenile court." *See id.* § 78B-6-105; *see also infra* ¶ 19. As we read the statute, the legislature has placed most adoption cases within the broad subject-matter jurisdiction of district courts, but has placed one sub-class of adoption cases within the narrower subject-matter jurisdiction of juvenile courts. Within the first (broader) category, we do not perceive the legislature as having set any jurisdictional limits on the ability of any particular judicial district or individual district court to hear any of the cases that fall within their purview.

court" but the courts in the district in which the adoptive parents reside has jurisdiction over a case.[4]

¶18 Indeed, while the linguistic structure of the statutory subsection in question is not at all similar to other statutes containing express jurisdictional limits, it is quite similar to other statutes concerning venue. Several of Utah's venue statutes require that a particular cause of action "be brought and tried" or "commenced and tried" in a particular location. *See, e.g., id.* § 78B-3-305(1) (stating that "[a]ll transitory causes of action arising outside the state, except those mentioned in Section 78B-3-306, shall . . . be brought and tried in the county where any defendant resides"); *id.* § 78B-3-306 (stating that "[a]ll transitory causes of action arising outside the state in favor of residents of this state shall be brought and tried in the county where the plaintiff resides, or in the county where the principal defendant resides"). We find it difficult to ignore the similarities between these venue statutes and the statute in question, which states that "[a]doption proceedings shall be commenced by filing a petition with the clerk of the district court . . . where the prospective adoptive parent resides." *See id.* § 78B-6-105(1)(a).

---

4. Furthermore, unlike some other comparable state statutes, *see, e.g.,* Wyo. Stat. Ann. § 1-22-109 (2018) (requiring specific documents to be filed with an adoption petition), Utah's statute does not impose any requirements on petitioners to file specific documents (such as, for instance, relinquishments or consents) with adoption petitions. Father points to some of these other state statutes, and notes that courts in other states have found such requirements to be jurisdictional. *See, e.g., In re JWT*, 2005 WY 4, ¶¶ 5–6, 104 P.3d 93. Father's argument is unavailing here, however, because Utah's statute imposes no such requirements, and therefore we need not consider whether our legislature intended any such requirements to be jurisdictional.

¶19    Moreover, in 2004 the legislature amended the title of the statute. Before the amendment, the statute had been captioned "Jurisdiction of district and juvenile court – Time for filing." *See id.* § 78-30-7 (LexisNexis 2003).[5] In the 2004 legislative session, without materially altering the relevant language of the statute itself, the legislature changed the title of the statute to read as it does now: "District court venue – Jurisdiction of juvenile court – Jurisdiction over nonresidents – Time for filing." *See* Adoption Amendments, ch. 122, § 11, 2004 Utah Laws 546, 553;[6] *see also*

---

5. In 2008, Utah Code section 78-30-7 was renumbered as Utah Code section 78B-6-105. *See* Title 78 Recodification and Revision, ch. 3, § 864, 2008 Utah Laws 48, 443.

6. The "redline" version of the bill that effected the title change did not show the new title in "redline" format, even though all proposed changes to the body of the statute were clearly marked. Father infers from this that the legislators themselves (as opposed, presumably, to legislative staff) may not have known that the title was even being changed, and therefore asserts that "the title change does not imply any legislative intent." We find Father's argument speculative—we simply do not know why the change to the title of the bill was not redlined, or whether that fact has any significance. Legislative history certainly has a role to play in helping courts interpret ambiguous statutes, *see, e.g.*, *Allred v. Saunders*, 2014 UT 43, ¶ 18, 342 P.3d 204 (stating that "it is sometimes appropriate to consider legislative history when interpreting statutes"), but in order to shed any meaningful light on the question of statutory meaning, the legislative history in question must itself be "reliable," *see Graves v. North E. Services, Inc.*, 2015 UT 28, ¶ 67, 345 P.3d 619 (stating that "[w]e may resolve ambiguities in the text of the law by reference to *reliable* indications of legislative understanding or intent" (emphasis added)). It is certainly mysterious that the title change was not redlined even though the rest of the proposed

(continued…)

Utah Code Ann. § 78B-6-105. "The title of a statute is not part of the text of a statute, and absent ambiguity, it is generally not used to determine a statute's intent. However, it is persuasive and can aid in ascertaining the statute's correct interpretation and application." *Blaisdell v. Dentrix Dental Sys., Inc.*, 2012 UT 37, ¶ 10, 284 P.3d 616 (quotation simplified). In this case, in which we must determine whether the statute is a jurisdictional statute or a venue statute, we find it significant that the legislature has specifically categorized the statute as one speaking to venue rather than to subject-matter jurisdiction.

¶20 Despite all of these persuasive indications that the relevant statute speaks only to venue and not to subject-matter jurisdiction, Father directs us to two of our previous decisions that have referred to the statute as "jurisdictional." *See In re adoption of S.L.F.*, 2001 UT App 183, 27 P.3d 583; *In re adoption of K.O.*, 748 P.2d 588 (Utah Ct. App. 1988). Father asserts that those cases constitute binding authority that the statute is jurisdictional and compel the dismissal of Petitioner's petition.

¶21 Father's argument certainly has some force. In those cases, we did refer to the statute as containing a "jurisdiction requirement," *see In re adoption of K.O.*, 748 P.2d at 591; *see also In re adoption of S.L.F.*, 2001 UT App 183, ¶ 17, and even went so far as to state that "[w]ithout knowing the [petitioners'] residence . . . , this Court cannot ascertain whether or not the trial court

---

(…continued)

changes were. But without knowing more about the reasons why that happened, or about what (if any) significance that had to the legislators who considered the bill, we find Father's argument insufficiently persuasive to overcome the basic fact that, prior to 2004, the title proclaimed the statute to be jurisdictional, but that since 2004, the legislature has chosen a title that proclaims the statute to be a venue statute, at least as concerns district courts.

had jurisdiction to grant the adoption," *In re adoption of K.O.*, 748 P.2d at 591. In one of the cases, we implicitly rejected the argument Petitioners advance here, namely, that the adoption statute was merely a "venue" statute, and held that "until the adoption petition was properly filed in Second District Court, where [the prospective adoptive parent] resides, the proceeding had not been 'commenced' as required" by the statute. *In re adoption of S.L.F.*, 2001 UT App 183, ¶ 16 n.1.[7] And in the other, we specifically stated that, if the trial court on remand "determines that it had no jurisdiction to hear the adoption because the [petitioners] were not residents of Cache County, Utah at the time of filing, that proceeding was void." *In re adoption of K.O.*, 748 P.2d at 592.

---

7. Even in *In re adoption of S.L.F.*, there is some indication that—prior to our supreme court's more recent cases—this court and the district courts were conceptualizing subject-matter jurisdiction too broadly. In that case, a potential adoptive parent filed an adoption petition in Salt Lake County (in the Third Judicial District), even though she lived in Davis County (in the Second Judicial District). *See In re adoption of S.L.F.*, 2001 UT App 183, ¶ 3, 27 P.3d 583. Later, the parent made a "motion for a change of venue," asking that the petition be transferred to Davis County. *Id.* ¶ 5. The Salt Lake County district court granted the motion, and transferred the petition to Davis County. *Id.* Had there been a jurisdictional defect of the kind Father envisions, transfer would not have been possible—indeed, the only action a court without jurisdiction can take is to dismiss the case. *See, e.g.*, *Hollenbach v. Salt Lake City Civil Service Comm'n*, 2013 UT App 62, ¶ 3, 299 P.3d 1148 (per curiam) (stating that "when a court lacks jurisdiction, it retains only the authority to dismiss the action" (quotation simplified)). No party took issue with the Salt Lake County district court's decision to transfer (rather than dismiss) the case, and we did not reach the propriety of that transfer on appeal.

¶22    It is undeniably the case that one panel of this court is bound to follow the previous decisions of another panel of this court, unless we make a specific decision to overrule or disavow the earlier precedent. *See State v. Legg*, 2018 UT 12, ¶ 9, 417 P.3d 592 (stating that "[u]nder the doctrine of horizontal stare decisis, the first decision by a court on a particular question of law governs later decisions by the same court," and specifically holding that "[t]he doctrine of horizontal stare decisis applies as between different panels of the court of appeals" (quotation simplified)). However, the principle of horizontal stare decisis only applies if the previous precedent remains robust. *See United States v. Plouffe*, 445 F.3d 1126, 1128 (9th Cir. 2006) (stating that "where an intervening higher authority has issued an opinion that is clearly irreconcilable with our prior circuit precedent, a panel is free to act disregarding that precedent" (quotation simplified)); *see also* 21 C.J.S. *Courts* § 190 (2018) (stating that "stare decisis does not preclude a decision that reflects developments in the law since the courts must consider statutory or case law changes that undermine or contradict the viability of prior precedent").

¶23    While the two cases upon which Father relies have not been explicitly overruled, two developments have taken place in the decades since those cases were decided that cause us to doubt the continuing vitality of those cases' discussions of jurisdiction. First, both of those cases were decided prior to 2004, when our legislature amended the title of the statute to specify that the statute, at least as concerns district courts, is intended to speak to venue and not to jurisdiction. Second, since those cases were decided, our supreme court has significantly "cabin[ed] the issues that fall under the category of subject matter jurisdiction," *Johnson*, 2010 UT 28, ¶ 10, and has made clear that subject-matter jurisdiction applies to only two situations, neither of which is present in this case. Our fealty is first and foremost to the mandates of our supreme court and to the enactments of our legislature, and where our precedent conflicts with more recent

supreme court pronouncements or statutory changes, we are duty-bound to follow the path our supreme court and our legislature have set. *See Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 30, 379 P.3d 18 ("We are bound by vertical stare decisis to follow strictly the decisions rendered by the Utah Supreme Court." (quotation simplified)); *Beltran v. Allen*, 926 P.2d 892, 898 (Utah Ct. App. 1996) (stating that "it is the Utah statute, as interpreted by majority holdings of the Utah Supreme Court, which controls the outcome of this case").[8]

¶24    For these reasons, we conclude that Utah Code section 78B-6-105(1)(a) speaks to venue, and does not limit a court's subject-matter jurisdiction. Accordingly, unless the adoption is one that must be filed in juvenile court pursuant to Utah Code section 78A-6-103(1)(o), *see* Utah Code Ann. § 78B-6-105(1)(c),

---

8. Father also argues that construing the relevant statute as a venue statute rather than as a jurisdictional statute would have "constitutional implications," because he points out that fathers are required to "strictly" comply with other provisions of Utah's adoption code, and argues that "it would be unconstitutional to impose a 'strict compliance' standard for biological fathers but a more relaxed standard for adoptive parents." Our conclusion herein regarding the meaning of the relevant statute—and, specifically, regarding the intended consequences of filing a petition in the wrong district—has nothing to do with requiring "strict" or "relaxed" compliance with the statutory mandates. Our conclusion is simply that the legislature intended the statute to function as a venue statute, and therefore a court does not lack subject-matter jurisdiction over an adoption petition filed in the wrong district any more than it would lack subject-matter jurisdiction over a divorce case or a tort case filed in the wrong county. We see no constitutional infirmities with the legislature's creation of a venue statute in this context, and therefore reject Father's constitutional arguments.

any district court has subject-matter jurisdiction to adjudicate an adoption case, even one filed in the wrong district, but must transfer the case to the correct district upon the filing of a proper request. *Cf. id.* § 78B-3-308 (stating that, when a case is filed in the wrong venue, a party may file "a written motion requesting the trial be moved to the proper county").

CONCLUSION

¶25     The provision in Utah's adoption code that requires that an adoption case be "commenced" by the filing of a petition in a particular judicial district is a provision that speaks to venue, and not to subject-matter jurisdiction. Petitioners did indeed file their petition in the wrong venue, but this did not deprive the court of subject-matter jurisdiction, because any district court in Utah has subject-matter jurisdiction over any adoption case that does not have to be filed in juvenile court. The consequence for filing in the wrong district is not automatic dismissal; it is that any party, upon proper motion, may request that the case be transferred to the correct district. Unless and until such a request is made, however, the court in which the case is filed may continue to adjudicate the case, and its rulings are not void. For all of these reasons, we affirm the district court's decision to deny Father's motion to dismiss for lack of subject-matter jurisdiction, and we remand the case to the district court for further proceedings consistent with this opinion.

———————