**2025 UT App 155**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF P.M.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

O.D.M.,
Appellant,
*v.*
STATE OF UTAH AND M.M.,
Appellees.

Opinion
No. 20240241-CA
Filed October 23, 2025

Third District Juvenile Court, Salt Lake Department
The Honorable Aaron Flater
No. 1225905

Emily Adams and Heather Ellison,
Attorneys for Appellant

Derek E. Brown, Deborah A. Wood, and John M.
Peterson, Attorneys for Appellee State of Utah

Martha Pierce, Alisha Giles, and Heath Haacke,
Guardians ad Litem

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and JOHN D. LUTHY
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     O.D.M. (Father) and M.M. (Mother) are the parents of P.M.
(Child).[1] The juvenile court adjudicated Child dependent as to

---

1. This is a companion case to and arises out of the same facts
involved in *In re P.M.*, 2025 UT App 154, which also issues today.

(continued…)

Father when Mother was involuntarily committed and Father was out of the state and not immediately available to take custody of Child. Father now seeks reversal of the court's adjudication order. For the reasons set forth herein, we agree that the court erred in adjudicating Child dependent as to him and accordingly reverse.

BACKGROUND[2]

¶2   While traveling in Utah with Child, Mother was involved in an incident at a hotel that led police officers to seek the involuntary commitment of Mother. Father was not with Mother at the time of the incident, and Child was taken into protective custody. The State filed a verified child welfare petition alleging that Child was abused, neglected, or dependent as to both Father and Mother. At the shelter hearing after Child's removal, because of Mother's allegations of domestic violence against Father and because the State had not had an opportunity to look into Father's fitness or the safety and appropriateness of placing Child with Father in Idaho, where the family resided, the juvenile court ordered that Child remain in protective custody. *See* Utah Code § 80-3-302(2)(c)(i) (requiring the court to "make a specific finding regarding the fitness of the parent [who wants to assume custody] . . . and the safety and appropriateness of the placement"). Approximately seven months after the petition was filed—during which time Father and Mother had relocated from Idaho to South Dakota and then to Utah and Utah had become the proper state to make a final child custody determination—the court held an adjudication hearing on the petition. At the close of

---

In that opinion, we resolve Mother's appeal. Here, we resolve Father's appeal.

2. A more fulsome description of the facts and procedural history can be found in Mother's appeal. *See In re P.M.*, 2025 UT App 154, ¶¶ 3–24. Here, we detail only the facts critical to the issue raised in Father's appeal.

the hearing, Father requested that the court enter "no findings" against him.

¶3 Following an oral ruling from the bench, the juvenile court entered an adjudication order finding Child dependent as to both Father and Mother. Shortly thereafter, Father filed a motion pursuant to rule 59 of the Utah Rules of Civil Procedure seeking to clarify or amend the adjudication order. Father asserted that the order did not clearly "state the reason for court jurisdiction over" Child, and that the court's factual findings were not sufficiently detailed to allow for meaningful appellate review because "many of the salient facts ha[d] been left out," thus making it "difficult for an outsider to determine what facts the court relied upon in reaching its decision that [Child] was dependent as to the parents."

¶4 The juvenile court granted Father's rule 59 motion and issued an amended adjudication order in June 2024. The court made several factual findings addressing the credibility of the witnesses who had testified during the adjudication hearing, including both parents and a caseworker from the Division of Child and Family Services (DCFS). As concerning Father, the court found that he "was evasive, not credible, and self-serving in his testimony." Consequently, unless Father's testimony was "corroborated by other information or evidence in the case," the court "essentially disregard[ed] the majority of" it. The court likewise found that there were issues with Mother's credibility. In contrast, the court found that the caseworker was a "very credible" witness who testified "without bias or interest in the outcome of the case."

¶5 Notwithstanding its credibility concerns, the juvenile court found that "certain statements" made by Mother regarding Father's alleged abusive behavior were "significant"; however, the court made no findings addressing the accuracy or correctness of Mother's statements. And although the court acknowledged that Father told the caseworker during their initial conversation that Mother "was not well, that she was crazy, that she was doing

rituals, that she had a disgusting apartment, and that she was neglecting [Child]," the court did not address whether Father's accusations were supported or believable. Moreover, despite finding that the caseworker was a credible witness, the court seemingly ignored her testimony that Father later reported to her that before he left for Texas "it was a good situation, that there wasn't really much concern."

¶6 The juvenile court made multiple findings regarding the incident that led to Child's removal. The court found that there were "deficiencies in the law enforcement investigation" at the hotel and that it was therefore difficult "to ascertain what exactly happened." Despite these issues, the court found that it was "not difficult . . . to believe the officers' testimonies that [Mother] was behaving very erratically and engaging in some activities and behaviors that were potentially dangerous to [Child]—specifically, holding [Child] around the neck when they tried to remove [Child] from her." The court also noted that "[t]here were concerns about [Child] in the parents' care long before what happened at the hotel," but it did not further elaborate on what those concerns were or who had raised them.

¶7 The juvenile court found that "[d]ue to her mental health episode and involuntary commitment, [Mother] was unable to provide proper parental care for [Child]." And the court made the following finding about Father's whereabouts at the time of Child's removal:

> At the time that [Mother] was involuntarily committed to the mental health facility, [Father] was not in the state and was thus unavailable to take care of [Child]. [Child] was removed on the late night/early morning of June 10, 2023 and DCFS did not hear from [Father] until June 15, 2023—five days after [Child's] removal when he spoke to the caseworker by phone from out-of-state. [Father] was not in the State of Utah at the time of [Child's]

removal—or five days thereafter—and could not take custody of [Child].

The court made no findings regarding when DCFS had attempted to contact Father about Child's removal or whether Father had any information regarding how to contact DCFS during the period of time between Child's removal and Father's first call with the caseworker.

¶8 Lastly, the juvenile court found that Father's statement to the caseworker regarding his concerns about Mother's mental state and alleged neglect of Child was "especially concerning" in light of the fact that Father "knowingly left [Child] alone with Mother" in Idaho while he traveled to Texas "despite having these concerns regarding [Mother's] ability to care for [Child]."

¶9 Based on the foregoing findings, the juvenile court concluded that Child was dependent as to both Father and Mother. Several months later, on October 23, 2024, Child was returned to Father and Mother's custody, and the court's jurisdiction was terminated.

## ISSUE AND STANDARD OF REVIEW

¶10 Father argues the juvenile court erred in adjudicating Child dependent as to him because the court's factual findings do not support such a conclusion.[3] "We review a juvenile court's legal conclusions for correctness; however, we grant the juvenile court

---

3. Although this appeal is technically moot because Child has been returned to Father and Mother's custody and the juvenile court's jurisdiction has been terminated, we agree with the parties that this case satisfies the collateral consequences exception to the mootness doctrine. *See In re M.S.*, 2023 UT App 74, ¶¶ 31–40, 533 P.3d 859. We accordingly address the merits of the appeal.

a measure of discretion when applying the law to a specific fact scenario." *In re L.M.*, 2001 UT App 314, ¶ 12, 37 P.3d 1188.[4]

ANALYSIS

¶11 Under Utah law, a "[d]ependent child" is defined as "a child who is without proper care through no fault of the child's parent, guardian, or custodian." Utah Code § 80-1-102(21). This definition "contains two parts: (1) the child in question must be without proper care, and (2) that status must have arisen through no fault of the parent." *In re B.D.*, 2024 UT App 104, ¶ 40, 556 P.3d 86 (quotation simplified). Here, Father contends the juvenile court improperly concluded that Child was a "dependent child" as to Father because the court's factual findings do not show that Child was "without proper care" from Father.

¶12 Although the phrase "without proper care" is not statutorily defined, this court recently addressed the meaning of that phrase in *In re B.D.*, 2024 UT App 104, 556 P.3d 86. There, we determined that "reasonableness concepts" are "naturally incorporate[d]" into the dependency framework. *Id.* ¶ 43 (quotation simplified). Thus, "proper care" in the dependency context means "the level of care and attention that [a] child reasonably needs under the circumstances." *Id.* And "a child is 'without proper care,' and therefore 'dependent,' where that child has no parent or guardian at all or where the child's parent or guardian—through no fault of their own—is unable to provide the level of care and attention that the child reasonably needs

---

4. In addition, Father has adopted Mother's arguments concerning the delayed adjudication hearing and the alleged resulting due process violations. *See In re P.M.*, 2025 UT App 154, ¶¶ 27–37. But given our determination that the juvenile court erred in adjudicating Child dependent as to Father, we need not address these additional claims.

under the circumstances."[5] *Id.* ¶ 44. Following this court's recent precedent, we agree with Father that based upon the unique circumstances that required Child to be taken into protective custody here, the juvenile court's findings fail to establish that Child was "without proper care" from Father.

¶13　As an initial matter, the juvenile court did not find that Child had "no parent or guardian at all." *Id.* And on the facts of this case, such a finding would have been impossible given that Child still has both parents.

---

5. The State argues in passing that the statutory definition of dependency "is clear as written and does not require any . . . judicial interpretation." We are mindful of the recent reminder from our supreme court that appellate courts should not "normally interpret [a] statute in light of its supposed purpose when the plain text tells us how the Legislature intended the statute to operate." *Scott v. Benson*, 2023 UT 4, ¶ 43 n.13, 529 P.3d 319; *id.* ("[W]here the statutory language is plain, we have no need to start poking around the statute's purposes in hopes of finding a gloss to put on the text."). But as discussed in *In re B.D.*, the statutory phrase "'without proper care' comes unaccompanied by further statutory definition . . . [and] is vague and conducive to a variety of reasonable interpretations." 2024 UT App 104, ¶ 42, 556 P.3d 86 (quotation simplified). Accordingly, incorporating notions of reasonableness in the dependency context, as we have done in the neglect context, makes sense. *See id.* ¶ 43. Moreover, "[i]t is undeniably the case that one panel of this court is bound to follow the previous decisions of another panel of this court, unless we make a specific decision to overrule or disavow the earlier precedent." *In re adoption of B.N.A.*, 2018 UT App 224, ¶ 22, 438 P.3d 10; *accord State v. Legg*, 2018 UT 12, ¶ 9, 417 P.3d 592. Because no party has specifically asked us to overturn *In re B.D.*, we decline to do so at this time. We thus adhere to the definition of "dependent" as articulated in that case. *See In re B.D.*, 2024 UT App 104, ¶ 44.

¶14 And none of the juvenile court's findings show that Father was "unable to provide the level of care and attention that [Child] reasonably needs under the circumstances." *Id.* While the bulk of the court's findings address the incident at the hotel and Mother's behavior and ability to care for Child at the time she was involuntarily committed, the findings are silent as to Father because he was not present at the time of the incident. Indeed, the only finding specifically addressing Father's ability to provide care to Child merely states that Father "was not in the State of Utah at the time of [Child's] removal or five days thereafter and could not take custody of [Child]." But this finding does not show that Father was unable to provide Child the care and attention she reasonably needed under the circumstances.

¶15 The relevant question when evaluating dependency is "whether the parent stands ready, willing, and able to provide the necessary care." *Id.* ¶ 47. Here, given that there was no determination that Mother was unable to care for Child before Father left for Texas or that Mother was at risk for involuntary commitment, there is no dispute that the events giving rise to Child's emergency removal were unforeseeable. In light of this fact, it would be unreasonable to conclude that where Father was unaware of Child's need for care, and where Child's needs had otherwise been met, Father's temporary absence alone supported a determination that Father was unable to provide Child the care she reasonably needed. Where a child is removed under unforeseen and emergency circumstances, that child reasonably needs a parent who can take custody in a reasonable amount of time and provide reasonable care. And a parent's *lack of knowledge* regarding a child's need in such circumstance cannot necessarily be construed as an *inability* to provide care. Thus, a child is not "without proper care" in an unforeseen and emergency circumstance unless a parent who is informed of the child's need is unable to provide reasonable care for the child in a timely way.

¶16 Here, the juvenile court's findings are inadequate regarding both (1) whether Father was aware of the need occasioned by Mother's involuntary commitment and (2) whether

Father could have provided reasonable care in a timely way if he had been informed. The court found that DCFS "did not hear from" Father until five days after Child's removal. But the court made no findings about when the State informed Father that it had custody of Child and whether Father had any information about how to contact DCFS. And the court made no findings concerning Father's ability to care for Child had he been informed.

¶17 Lastly, none of the juvenile court's other findings that mention Father establish that he was unable to care for Child. Although the court found that Father's statement to the caseworker that Mother "was not well, that she was crazy, that she was doing rituals, that she had a disgusting apartment, and that she was neglecting [Child]" was "especially concerning" in light of the fact that he "knowingly left [Child] alone with Mother" to attend to business in Texas, this finding does not support a dependency adjudication because those facts have nothing to do with *Father's* ability to care for Child when Mother later became involuntarily committed.[6] And while the court found that Mother had raised allegations of domestic abuse by Father and that there "were concerns about [Child] in the parents'

---

6. Nor does the finding that Father's statements about Mother's conduct and mental health prior to leaving for Texas were "especially concerning" support—by itself—a determination that Father neglected Child by leaving her with Mother while he traveled to Texas. Neglect, like dependency, includes a finding that a child lacks care; the two differ only on the issue of parental culpability. Dependency occurs when a child "is without proper care through no fault of the child's parent," Utah Code § 80-1-102(21), whereas neglect occurs when the lack of parental care is "by reason of the fault or habits of the parent," *id.* § 80-1-102(58)(a)(ii). Troubling as Father's statements may have been, without a *finding* either that Mother was actually neglecting Child or that Child was actually dependent as to Mother *before* Father decided to leave Child with Mother and travel to Texas, the finding that Father's statements were "especially concerning" does not alone support a neglect finding as to Father.

care long before what happened at the hotel," the court made no factual findings related to these claims. This is particularly significant in light of the fact that Mother voiced her allegations amid a mental health episode that led to her being involuntarily committed, and the fact that prior to Child's removal, neither of the parents had been involved in any Utah court system. Thus, it is unclear who raised the "concerns" cited by the court, or even precisely what those "concerns" entailed.

¶18    In sum, the juvenile court's findings are inadequate to support a determination that Child was "without proper care" from Father. Although the court correctly found that Father was unable to take immediate custody of Child at the time of her removal because he was not in the state, the court wholly failed to address whether Father, upon being notified about Child's removal, was unable to take custody of Child in a reasonable time and care for her properly. Given this deficiency, the court erred in adjudicating Child dependent as to Father.

CONCLUSION

¶19    Because the juvenile court's findings do not support a determination that Child was without proper care from Father, the court erred in adjudicating Child dependent as to Father. We therefore reverse Father's dependency adjudication.

_____