HARDY v. MEADOWS et al.

No. 4587.   Decided January 25, 1928.   (264 P. 968.)

*Henry D. Moyle* and *J. M. Christensen,* both of Salt Lake City, for appellant Hubbard.

*Willard Hanson* and *A. H. Hougaard,* both of Salt Lake City, for respondent Meadows.

STRAUP, J.

J. C. Hubbard is a physician and suregon practicing his profession in Carbon county. Charles Meadows also lived in that county. In January, 1924, Dr. Hubbard, assisted by Dr. Kendall and others, at a hospital at Standardville, in Carbon county and at the instance and request of Meadows, operated on him for appendicitis. Shortly after the operation Meadows left Carbon county and went to Salt Lake City. A year and about ten months thereafter and in November, 1925, Meadows, by the filing of a complaint, commenced an action in the district court in Carbon county against Dr. Hubbard and Dr. Kendall, whereby he sought to recover from them $5,750 for damages which he alleged he sustained through their negligence in the course and in the performance of the operation, by permitting or causing an acid or other poisoning drug, the nature of which was unknown to Meadows, or some hot or heated object or instrumentality, the nature of which also was unknown to him, to come in contact with his leg between the knee and the ankle while he was under the influence of an anaesthetic, thereby burning the skin and muscles of his leg to his damin the sum of $5,000, and to a loss of earnings amounting to $750. The doctors, by counsel L. A. McGee, residing in Carbon county, appeared in the case and filed an answer denying the alleged negligence and inury. In the meantime Dr. Hubbard, for collection, assigned his claim, amounting to $125 for the professional services rendered Meadows, to M. S. Hardy, doing business under the firm name and style of Doctors' Business Bureau. While the action in Carbon county was at issue and there pending and untried, Hardy, on the claim assigned to him, on April 1, 1926, by counsel, Frazier & Wallis, residing at Salt Lake City and employed by him, commenced an action in the city court of Salt Lake

City by the filing of a complaint against Meadows, whereby it was sought to recover from him $125 for the professional services rendered him by Dr. Hubbard. Summons was served on Meadows at Salt Lake City. In due time and on April 21, 1926, Meadows, by counsel, appeared in the action, answered the complaint, and, obtaining an order of the city court to interplead Dr. Hubbard, filed in that court a counterclaim against Dr. Hubbard, alleging therein the same matters which were alleged by him against Dr. Hubbard in the action pending in Carbon county, claiming that he sustained an injury to his leg in the sum of $5,000 through the negligence of Dr. Hubbard by permitting in the course of the operation an acid or other poisoning drug or some hot object or instrumentality to come in contact with his leg, burning the skin and muscles thereof, and that he lost $750 in wages and thus by the counterclaim claimed damages against Dr. Hubbard in the sum of $5,750 and prayed judgment against him for such amount and for costs. Service of summons and of a copy of the counterclaim were, on behalf of Dr. Hubbard, admitted by Frazier & Wallis who also appeared as attorneys for Hardy. They, in due time, on behalf of Hubbard, filed a demurrer on the ground that the counterclaim did not state sufficient facts; that the cause of action alleged in the counterclaim was not pleadable as a counterclaim in the action; and that the city court did not have jurisdiction of the subject-matter of the counterclaim nor of the cause of action therein alleged. The demurrer was overruled by the city court and Hubbard given five days to answer the counterclaim. He answered, denying the negligence, injury, and damage therein alleged. The answer was signed and filed by his counsel, McGee, and by Young, Moyle, Boyle & Christensen, attorneys at Salt Lake City. The Young firm, who, after the action was commenced, also appeared for Hardy and on his behalf, filed a demurrer to the counterclaim which was also overruled. They then answered for Hardy, putting in issue the material allegations of the counterclaim. On these issues the case

was tried in the city court to the court and a jury. Young, Moyle, Boyle & Christensen appearing for Hardy and Hubbard. A verdict was rendered November 10, 1926, whereby the jury found "for the defendant Charles Meadows in the sum of $874.99, with costs herein incurred." On the same day judgment was entered on the verdict in favor of Meadows and against Hubbard for that sum. What became of the demand of the complaint of Hardy, or how it was disposed of, is not disclosed by the transcript of the record of the city court. From the judgment rendered and entered against Hubbard, he, in due time, by his counsel, Young, Moyle, Boyle & Christensen, prosecuted an appeal to the district court in and for Salt Lake county.

When the case was there set for trial and before the jury was impaneled, counsel for Hubbard made a motion and urged that the city court had no jurisdiction of the subject-matter of the counterclaim for the reason that the amount of the claim therein stated was not within, but was beyond, the jurisdiction of that court, and that it had no jurisdiction to hear or to determine it; and urged that as the city court did not have jurisdiction of the subject-matter of the counterclaim, the district court did not acquire jurisdiction thereof by the appeal, except to set aside the judgment of the city court relating to the counterclaim and to dismiss it it. In support thereof counsel referred to the statute (Sess. Laws 1921, c. 43, p. 115), whereby it is provided that:

"The city court shall have civil jurisdiction; * * * (2) In actions to recover damages for injury to the person, or to the personal property, or for taking or detaining personal property, or for injury to real property, if the damages claimed be less than $1,000, exclusive of costs,"

—and in all other enumerated actions where the amount of damages "claimed is less than $1,000," in some instances stated to be "exclusive of costs," and in others, only "less than $1,000"; and referred to the counterclaim filed in the

city court wherein the damages claimed were $5,750, that a demurrer was filed in the city court there challenging jurisdiction as to the subject-matter of the counterclaim and to the cause of action therein stated and that the demurrer was by the city court erroneously overruled, all of which was shown by the transcript of the record of the city court transmitted to the district court.

The motion was resisted by counsel for Meadows who claimed that there was an agreement or understanding between him and McGee and Frazier & Wallis, former counsel representing Hubbard and Hardy, to the effect that by Meadows dismissing his cause in Carbon county, which he did, he should be permitted to set up his claim in a counterclaim in the city court as fully and to the same extent as was set forth in his complaint in the cause in Carbon county, and that no objection would be raised in the city court as to jurisdiction. Letters which it was claimed passed between counsel were exhibited to the court, which it was contended on the one side evidenced the agreement and on the other only a waiver of jurisdiction of the person. After verdict and entry of judgment in the district court, a stipulation was entered into between counsel respecting the matter, which presently will be noticed.

The motion was overruled, the district court observing that on the face of the record he "could not reverse the judgment" of the city court; that there was "a question as to the way it has come up * * * whether the fact that a larger amount was set out in the pleadings in the lower court, when it comes to this court, when objection is made, whether it should be sustained. I feel, however, that coupled with the suggested agreement, although it is not a definite stipulation, there should be an ethical working plan between counsel, where an understanding is reached it ought to be carried out, unless there is some special reason why it should not be, * * * then there is the question, whether or not, an appeal being taken does not submit by consent to the

trial of the cause in this court, and undoubtedly after it is in this court it would have jurisdiction, barring that which precedes it." Thus the cause in the district court, notwithstanding the objection and the motion, proceeded to trial before the court and a jury. During the trial, but before the submission of the case, counsel for Meadows, with leave of court and by interlineation, amended his counterclaim by striking the figures "$5,750" therein and inserting in lieu thereof, "$1,000," both in the body of the counterclaim and in the prayer where such figures appeared. In submitting the case to the jury, the court instructed them that if they found Hubbard liable, their verdict "must be in a sum less than $1,000." The jury rendered a verdict in favor of Hardy and against Meadows in the sum of $125, and in favor of Meadows and against Hubbard in the sum of $1,-000, upon which judgments were entered accordingly February 15, 1927. From the judgment entered against him, Hubbard has prosecuted this appeal.

The first point urged by him is that the city court did not have jurisdiction of the subject-matter of the counterclaim and hence the district court acquired none by the appeal, other than to determine the question of jurisdiction and to set aside the judgment rendered by the city court on the counterclaim; and that subject-matter jurisdiction may not be conferred by consent or waiver. Counsel for Meadows in effect concede that, were it not for the claimed agreement entered into between counsel, the city court was without jurisdiction of the subject-matter presented by the counterclaim because the amount therein claimed was not "less than $1,000," but was $5,750. A contrary contention, of course, is hardly debatable. That is manifest. Nor is it disputed that the amount claimed in a complaint or counterclaim, and not the amount rendered by verdict or judgment, is the criterion by which the jurisdiction of the city court is to be determined. Substantially all of the authorities so hold under a statute similar as here prescribing and conferring civil jurisdiction on

a city, or justice, or other inferior court. We prior hereto have held that. We again so hold. But counsel for Meadows further contend that, though the city court did not have jurisdiction of the subject-matter of the counterclaim, yet because of the appeal to the district court, a court of appellate, concurrent, and original jurisdiction, jurisdiction both of subject-matter and of person was conferred on the district court to hear, try, and determine, de novo, the whole issue, including the counterclaim, to the full extent and as therein set forth in the city court; and that subject-matter jurisdiction may be and here was conferred both on the city and on the district court by consent and waiver.

This brings us to the stipulation entered into by counsel for the respective parties on May 3, 1927, about two months after the motion for a new trial in the district court was overruled, and about three months after the verdict therein was rendered and judgment entered, and on further evidence relating to the agreement claimed to have been entered into between counsel shortly after the action was commenced in the city court with respect to letters passing between counsel relating to the agreement, which additional evidence was heard by the court a month or more after the verdict was rendered and judgment entered and after the motion for a new trial had been overruled. The substance of the stipulation, which is made a part of the bill of exceptions, is that prior to the impaneling of a jury in the district court a motion was made to set aside the judgment of the city court rendered on the counterclaim as hereinbefore indicated; that in connection with the motion "certain letters" were put in evidence purporting to show an agreement between prior counsel for a dismissal of the action in Carbon county and that Meadows should be permitted to file a counterclaim in the city court "in the same manner and to the same extent as was set forth in the complaint in the action in Carbon county, Utah, and that the then attorneys for plaintiff in said action would waive any jurisdictional questions in consideration of such dismissal;" that

the motion in the district court was denied with the reservation that Meadows present further evidence with respect to the agreement; that at the conclusion of the evidence in the trial of the cause in the district court counsel agreed that the court direct the jury that, in the event the jury found against Hubbard and in favor of Meadows, such verdict should not be in excess of $1,000, and that, if Attorneys McGee and Frazier & Wallis would stipulate or in writing inform present counsel that an agreement was theretofore entered into "that this case should be tried out on the counterclaim in this suit for doctor fees, then the motion heretofore made to dismiss this case on the ground that the district court had no jurisdiction shall be withdrawn"; that certain letters written by McGee and Frazier & Wallis were thereafter introduced in evidence and further testimony was given by Attorney Wallis and by counsel for Meadows to the effect that an agreement was entered into between Frazier & Wallis, as attorneys for Hardy and for Meadows, "that if said Charles Meadows would dismiss his complaint in Carbon county, he should and would be permitted to file the same in said action pending in said city court, and there assert and claim the same and identical things and the same amount of damages claimed in said Carbon county suit, and that no question of jurisdiction of the said city court, or any question relating to the right of said city court to hear and determine said case would be raised therein by said plaintiff or by said interpleaded defendant, J. C. Hubbard, and that he, the said Wallis, had consulted with said L. A. McGee who was then attorney for said J. C. Hubbard in said Carbon county suit, and that the said L. A. McGee had stated to the said Wallis that said arrangement was entirely satisfactory and agreeable," all of which was communicated by Wallis to the attorney for Meadows "and that pursuant to such stipulation said case progressed in said city court until the firm of Young, Boyle, Moyle & Christensen were employed therein," and that Wallis had informed that firm of such arrangement and agreement.

The stipulation further recited that counsel for Hubbard, in the trial of the cause at all times, objected to the introduction of all testimony concerning any claimed agreement had with prior attorneys relating to the jurisdiction of the city court, or of the district court, on the ground that such an agreement could not confer jurisdiction, and that the offered evidence respecting it was irrelevant, immaterial; and that the objections were overruled, to which counsel for Hubbard duly excepted. The rulings admitting the evidence are also assigned as error.

Thus, on the record as has been seen, jurisdiction of the city court to entertain the counterclaim filed therein was timely challenged by the demurrer interposed thereto in the city court. On the face of the counterclaim the demurrer was undoubtedly well founded and was erroneously overruled. In the district court such jurisdiction was again timely challenged and at the threshold of the proceedings had therein; and on the face of the record the motion raising the question undoubtedly was well taken. These objections were sought to be overcome and were held to be overcome by permitting Meadows, in the district court, dehors the pleadings and at variance with them, and aliunde the record of the city court on appeal transmitted to the district court, to prove, over the objections of Hubbard, that an agreement or understanding of former counsel in the city court was had, whereby Meadows was permitted to file the counterclaim filed by him, and that no question of jurisdiction would be raised. Such proof does not aid the record of the city court, but disputes it. If a record may so be impeached, then pleadings and a record in a cause are for naught and what was heard and decided therein left to memory, motives, and desires of litigants or their counsel and lead to wrangles and disputes as to their intentions. In the next place, it is familiar doctrine that subject-matter jurisdiction of a cause may not be conferred by consent or waiver where the court or tribunal is without such jurisdiction. Thus the city court was

without jurisdiction of the counterclaim wherein the damages claimed were $5,750, and ought to have sustained the demurrer interposed thereto and dismissed the counterclaim. The legal proposition is not seriously disputed by counsel for Meadows, yet, as has been seen, the proof, over Hubbard's objection, permitted to be made by Meadows as to an agreement or understanding of former counsel, was as to the filing of the counterclaim in the city court and that no question of jurisdiction would be raised. The city court clearly having no such subject-matter jurisdiction— no one contends it had—it is idle to assert that any agreement or consent could confer such jurisdiction. One may as well assert that parties, by agreement or consent, may confer jurisdiction on a justice to determine title to real property, appoint a receiver of a railroad, or entertain quo warranto proceedings to oust the Governor from office. Just as idle is it to assert, as is done, that because of the claimed agreement Hubbard is estopped from questioning the jurisdiction of the city court to entertain the counterclaim. These propositions are so elementary as not to need further elaboration. The proof thus permitted to show an agreement or consent to the filing of the counterclaim in the city court ought to have been rejected as being incompetent and immaterial.

This brings us to the further contention of counsel for Meadows. They urge that this court is committed to the doctrine that though the city court did not have jurisdiction of the subject-matter of the counterclaim, yet, since the district court to which the case was appealed had original and concurrent jurisdiction of matters alleged in the counterclaim, that court, by the appeal, acquired jurisdiction of the subject-matter of the counterclaim to the same extent as though an original action had been commenced in the district court presenting and involving the matters alleged in the counterclaim. In support thereof the cases of *Wheatley* v. *O. S. L. R. Co.*, 49 Utah 105 162 P. 86, *Burt & Carlquist Co.* v. *Marks*, 53 Utah 77, 177

P. 224, and *Devlin* v. *District Court of Weber County*, 53 Utah 208, 178 P. 73, are chiefly referred to and relied on. The Wheatley case directly makes for Hubbard, the appellant, and against Meadows, the respondent. There the statute (Comp. Laws 1907, § 688) fixing the civil jurisdiction of justice's courts provided that a justice should have jurisdiction "in actions for damages * * * for injury to personal property, * * * if the damages claimed be less than $300." In the complaint filed in the justice's court for injury to personal property, the damages claimed were more than $300; the judgment rendered by the justice also exceeded that sum. On appeal to the district court where the case was tried de novo, the district court rendered a judgment for less than $300. Under the statute no appeal lay to this court from the judgment, but this court, on application made, reviewed the proceedings on certiorari. It held that the amount claimed in the complaint filed in the justice's court determined the jurisdiction of that court; that the amount claimed being in excess of $300, the justice had no jurisdiction of the cause and of the subject-matter; that the justice not having jurisdiction of the cause and of the subject-matter because the amount claimed was in excess of the jurisdiction of that court, the district court did not acquire jurisdiction on the appeal; and since neither the justice nor the district court had jurisdiction of the cause this court annulled all the proceedings had therein and the judgment rendered in virtue thereof.

The Burt & Carlquist Company Case involved this proposition. Burt & Carlquist Company commenced an action in the city court against Marks to recover $100. In response to the complaint Marks paid the money into court. John Anderson interpleaded, and by way of counterclaim claimed the amount of money and judgment therefor. The civil jurisdiction of the city court then was restricted to actions where the sum claimed was less than $500. Thus it is seen that the city court had jurisdiction not only of the subject-matter of the complaint, but also of the counterclaim. That

court rendered judgment in favor of the company. Anderson prosecuted an appeal to the district court. When the case there came on for trial, Anderson, by leave of court, and without objection from any one, amended his counterclaim (claiming he became possessed of facts theretofore unknown to him) whereby he sought to recover from Burt & Carlquist Company $600 and prayed judgment therefor. The case on the counterclaim as amended was tried on merits in the district court without objection of any kind. A verdict was rendered and judgment entered in favor of Anderson for $100 from which Burt & Carlquist appealed to this court. Among the questions presented was the question of whether the district court exceeded its jurisdiction in permitting the amendment of the counterclaim. This court disposed of the question by holding that on the face of the pleadings, including the counterclaim, the city court had jurisdiction of the cause and of the subject-matter therein set forth; that the city court having such jurisdiction the district court acquired jurisdiction by the appeal, and the counterclaim in the district court having been amended and the issues as amended tried without objection, the appellant could not be heard to complain for the first time in this court of the ruling permitting the amendment. Because of such matters that case was distinguished from the Wheatley Case and the conclusion reached that the Burt & Carlquist Company Case did not fall within it. In referring to and approving the Wheatley Case, this court, in the Burt & Carlquist Company Case, said:

"The justice of the peace in that case [Wheatley Case] did not have jurisdiction of the subject-matter of the action, namely, a sum in excess of $300. In the case at bar the suit, as commenced and as it was tried in the city court, was for a sum that was within the jurisdiction of the court to hear and determine. This case is therefore clearly distinguishable from the Wheatley Case. The authorities practically all agree that where a justice of the peace court is without jurisdiction to hear and adjudicate the subject-matter of an action commenced therein, an appellate court to which the case is appealed does not acquire jurisdiction of the action, even though the appellate

court had original jurisdiction of the subject-matter of the action. 24 Cyc. 641; 3 C. J. 366, and cases cited in footnote. It was upon this well-recognized principle of law that the Wheatley Case was ruled and decided by this court.

The proposition involved in *Devlin* v. *District Court* is this. Francis Hawkins commenced a civil action against Mike Devlin in a municipal court at Ogden. Devlin answered and filed a counterclaim. No point was involved as to subject-matter jurisdiction of the municipal court and as presented by the pleadings. The municipal court, on the merits, found against both the complaint and the counterclaim and dismissed the action as to both. Hawkins took an appeal to the district court. His appeal was one day late. Devlin, however, without objection and without raising any question that the appeal was not taken in time, appeared in the district court and entered on the trial on merits. The trial resulted in a judgment against Devlin. Some time after the judgment was entered, Devlin filed a motion in that court to vacate the judgment on the ground that the appeal to the district court was one day late. The court denied the motion. On Devlin's application the proceedings were reviewed on certiorari by this court. In reveiwing them this court said:

"There is no doubt that under our statute an appeal must be taken from an judgment of a justice of the peace or municipal court by serving and filing a notice of appeal within thirty days from the service of a notice in writing upon the adverse party of the entry of judgment. This court has very recently held (*Greenwood* v. *Bramel*, 54 Utah 1, 174 P. 637) that when the notice of appeal is not served and filed within that time the district court is without power to entertain the appeal over the objection of the adverse party."

While the court observed that where an appellate court can acquire jurisdiction over the subject-matter of a controversy only through an appeal, then, in case an appeal is not taken in time, the appellate court acquires no jurisdiction even though no objection is made that the appeal was not taken in time, yet further observed that:

"It is, however, quite generally held that where the court to which the appeal is taken has concurrent jurisdiction of the subject-matter involved in the appeal with the court in which the judgment appealed from is entered, then, while an appeal which is not taken within the time required by statute must be dismissed in case the adverse party makes proper and timely objection that the appeal was not taken in time, yet if under such circumstances the adverse party fails to object and appears in the appellate court and joins issue, and a trial is had upon the merits, and judgment is duly entered, then the objection that the appeal was not taken in time comes too late, and the adverse party by his acts and conduct will be held to have waived the defect, and the judgment entered in the appellate court will not for that reason be held invalid."

Here, as has been seen, Hubbard, by demurrer, timely challenged the jurisdiction of the city court, and at the threshold of the case in the district court again challenged the jurisdiction of the city court as to the subject-matter of the action; and likewise timely challenged the jurisdiction of the district court, and at the threshold of the case in that court presented and raised the question of jurisdiction. In the case of *Greenwood* v. *Bramel* (54 Utah 1, 174 P. 637), referred to in the Devlin Case, and where likewise the appeal from the justice's court to the district court was one day late, this court held:

"That the district court, by reason of the said notice not having been filed within 30 days from the time of service of the notice of the rendition of the judgment, was without jurisdiction to proceed with the case and try it upon merits, and that the petitioner's application for dismissal of the appeal should have been complied with,"

—and thus annulled the order of the district court refusing to dismiss the appeal from the justice's court. That ruling was unqualifiedly approved in the Devlin Case.

The effect of the holdings in all these cases is that the jurisdiction of the district court of a cause on appeal from a justice's court or other inferior court is derivative and as is held in many other jurisdictions; that if the inferior court

had not jurisdiction of the cause and of the subject-matter therein presented, the district court acquired no jurisdiction thereof by appeal; though the inferior court had jurisdiction of subject-mater, yet, if the appeal was not taken within the time provided by law, the district court, against timely objections, does not acquire and is not vested with jurisdiction to hear or try the cause on merits; where, however, the inferior court has jurisdiction of subject-matter but the appeal is defective, or irregular, or even not taken in time, and no question with respect to the appeal is timely raised and the party against whom the appeal is taken appears and enters on the trial of the cause on merits to judgment without objection, he may not thereafter be heard to assert that the appeal was defective or not taken in time. This, we think, reflects the decisions of this court in the cases referred to as to the material points therein involved and decided. And what was decided in the Wheatley case was not by the subsequent cases disturbed, but, as has been seen, was expressly approved. Let the language of the Burt & Carlquist Co. Case again be noticed, that:

"The authorities practically all agree that where a justice of the peace court is without jurisdiction to hear and adjudicate the subject-matter of an action commenced therein, an appellate court to which the case is appealed does not acquire jurisdiction of the action, even though the appellate court had original jurisdiction of the subject-matter of the action."

That is the situation here. Proof of an agreement that the city court was permitted to entertain the counterclaim filed therein cannot aid Meadows. There are many things pertaining to the formal or adjective law which parties may waive. They may, as to matters personal to themselves, override the law and stipulate one for themselves. They may acquiesce in error and by acquiescence avoid its effect. But matters of substance or of subject-matter jurisdiction may not be waived. These need neither objection, exception, nor assignments of error. With respect to them courts, sua

sponte, open the record and take notice of defects of substance and of subject-matter jurisdiction without regard to the wishes of either party named on the record. The sovereignty, the state, requires and demands coram judice proceedings. No other suffices. No other will be recognized. The state gives much freedom to suitors to stipulate for themselves as to matters personal to themselves, but it has not given them the right to waive or contract away what concerns the state itself, coram judice proceedings. What an anomaly and what disorder would be created were parties permitted by agreement to confer jurisdiction on a justice to entertain divorce proceedings, try title to realty, grant injunction and prohibition, appoint receivers, etc. Just as anomalous and grievous is it to contend and hold that though the justice had not jurisdiction of subject-matter, yet, if the cause by appeal is taken to the district court, that court acquires jurisdiction of the cause and of the subject-matter to hear and try it on merits, for the reason that causes involving such matters may originally be commenced and tried in the district court. Invoking the jurisdiction of the district court in a cause originally commenced in that court is one thing. Invoking its jurisdiction in a cause commenced in an inferior court and appealed to the district court is quite another thing. In the one a cause of original, and in the other of a derivative, jurisdiction is invoked. Whatever may be the rule elsewhere, the one declared by and to which this court is committed, that when the inferior court is without jurisdiction to hear and adjudicate the subject-matter of an action commenced therein, the district court to which the case is appealed does not acquire jurisdiction of the action though the district court would have original jurisdiction of such subject-matter if by an original action such jurisdiction is invoked, is a wholesome rule and one founded on basic principles.

The conclusion thus reached by us is that since the city court did not have jurisdiction of the subject-matter presented by the counterclaim, the district court, by appeal, did

not acquire nor was it vested with jurisdiction to hear or try the counterclaim on merits, and that the judgment rendered on the counterclaim by the city court and the district court are nullities and should be vacated.

Though we should be in error as to this, yet, on the record, the judgment on the counterclaim nevertheless must be reversed and vacated. The court charged the jury thus:

"You are instructed that if you find from the evidence that the injury received by Charles Meadows, if any, occurred not in the operating room, but in the hospital room to which Charles Meadows was taken following the operation, and by reason of some hot object or instrumentality belonging to the hospital, and under control of the hospital, even though there may have been negligence on the part of the hospital or its servants, then Dr. J. C. Hubbard, the defendant by interpleader, is not liable for such negligence.

"You are instructed that there is no evidence in this case that the interpleaded defendant, Dr. J. C. Hubbard, had any supervision or control over the hospital or its agents or employees, and that if you find from the evidence that the injury, if any occurred to the defendant Charles Meadows, was brought about by the negligence or want of care of the hospital or its attendants, then your verdict shall be for the interpleaded defendant, Dr. J. C. Hubbard, and against the defendant Charles Meadows, no cause of action."

No evidence whatever was given to show that the burn on Meadow's leg occurred in the operating room or in the course of the operation, as in the counterclaim alleged. To the contrary, much evidence was given on behalf of Hubbard that no such injury occurred in the operating room or in the course of the operation. That evidence is not disputed. There is evidence to show that after the operation, and after Meadows was removed from the operating room and taken to a room in the hospital and there put to bed, his leg came in contact with a heated radiator near the bed while he was coming out of the anaesthesia and by struggling and tossing about in bed, which was unsuccessfully attempted to be prevented. The verdict rendered by the jury on the counterclaim is against both the evidence

and the charge, and hence the judgment rendered thereon must in all events be reversed and set aside. But since the district court had no jurisdiction of the subject-matter of the counterclaim, the case may not be and is not remanded for a new trial.

The case is remanded to the district court with directions that the judgment therein rendered on the counterclaim be annulled and vacated and the counterclaim dismissed, and that the judgment in the city court rendered on the counterclaim be also vacated and set aside.

Costs to appellant.

THURMAN, C. J., and CHERRY, HANSEN, and GIDEON, JJ., concur.