**2023 UT App 59**

## THE UTAH COURT OF APPEALS

DUKE CAPITAL LLC,
Appellant,
*v.*
JON PROCTOR,
Appellee.

Opinion
No. 20210581-CA
Filed May 25, 2023

Third District Court, Tooele Department
The Honorable Dianna Gibson
No. 200301831

Gregory M. Constantino, Attorney for Appellant

Jon Proctor, Appellee Pro Se

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN D. TENNEY concurred.

LUTHY, Judge:

¶1     Jon Proctor borrowed $5,400 from LoanMe, Inc., and signed a promissory note (the Note) in exchange. The Note contained an arbitration provision (the Arbitration Provision). After some months, Proctor quit making payments on the loan, LoanMe sold the Note to Duke Capital, LLC (Duke), and Duke sued Proctor. Proctor filed a pro se answer but did not respond when Duke moved for summary judgment. The district court denied Duke's motion and, instead, invoked the Arbitration Provision, concluded that the Arbitration Provision divested the court of jurisdiction, and dismissed the case. Duke appeals.

¶2     We hold that the district court erred by sua sponte invoking the Arbitration Provision and by concluding that the Arbitration Provision divested the court of jurisdiction. We

therefore reverse the court's order of dismissal. We reject, however, Duke's assertion of judicial misconduct and endorse the district court's admonition to Duke's attorney to avoid arguments that impugn, without evidence, a court's impartiality. Finally, we hold that the district court erred by denying Duke's summary judgment motion, and we remand with instructions that the court enter judgment in favor of Duke.

BACKGROUND

¶3 In July 2018, LoanMe, a California lender, loaned Proctor, a Utah resident, $5,130 plus $270 for a "Prepaid Finance Charge/Origination Fee." In exchange, Proctor signed the Note, in which he "promise[d] to pay to the order of LoanMe . . . or any subsequent holder of [the] Note the sum of $5,400.00, together with interest calculated at 110.00% . . . and any outstanding charges or late fees, until the full amount of [the] Note is paid." The Note outlined a payment schedule requiring Proctor to make eighty-six monthly payments, all but the first and last of which were to be $495.31, beginning in August 2018.

¶4 Proctor made the minimum payment or more in August, September, October, and November 2018, but he made no payments after that. After Proctor stopped making payments, LoanMe sold the Note to Duke. Duke asked Proctor to pay the balance owing, and when he did not, it sued him for breach of contract. Proctor filed a pro se answer, and Duke then filed a motion for summary judgment. In its motion, Duke asserted as undisputed facts the terms of the Note, Proctor's payment history, and Duke's purchase of the Note. It also submitted an affidavit providing an evidentiary basis for those facts. Proctor did not respond to Duke's summary judgment motion.

¶5 The district court scheduled a hearing on the motion. Duke's counsel (Counsel) attended the hearing; Proctor did not. At the outset of the hearing, the court explained that its purpose

in holding the hearing was to "ask if [the] [c]ourt had jurisdiction" in light of the Arbitration Provision. The relevant terms of the Arbitration Provision are as follows:

> WAIVER OF JURY TRIAL AND ARBITRATION PROVISION. Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. . . . We have a policy of arbitrating all disputes with customers which cannot be resolved in a small claims tribunal . . . . THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:

> For purposes of this Waiver of Jury Trial and Arbitration Provision, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation . . . all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Note . . . [;] all common law claims, based upon contract . . . [;] [and] all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us . . . .

> . . . .

> 3. Any party to a dispute . . . may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. . . .

> . . . .

6. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the [Federal Arbitration Act].

¶6 Counsel responded to the court's inquiry about jurisdiction by asserting that the Arbitration Provision is "not a mandatory arbitration clause" and that the court "has jurisdiction." He argued that "if a dispute arises between the parties, either party can select arbitration as a way of settling that dispute, but neither party is required to [initiate arbitration]." He also referenced his awareness of "a case where . . . the federal courts found that this is not a mandatory provision."

¶7 The court stated its view that the Arbitration Provision is mandatory and that "this is really a question of jurisdiction." The court also explained that even though Proctor had not responded to Duke's motion, the court still had an obligation to determine whether summary judgment was appropriate. Counsel then observed that he had not "been aware of this issue until [the] hearing." The court said that it would be "happy" to "give [Counsel] an opportunity to respond . . . and provide additional information" before it ruled on the motion.

¶8 Counsel then reiterated his view that "if neither party [to the Note] chooses [arbitration]," then the court "absolutely has jurisdiction" and "doesn't have the right to choose arbitration." The court explained that it was "not electing arbitration" and, instead, that it appeared to the court "that the parties [had] elected [arbitration] on their own by . . . the inclusion of the [A]rbitration [P]rovision in the [Note]." The court then asked Counsel to identify where in the Arbitration Provision it says that arbitration was something that the parties still had to choose.

¶9 Counsel pointed to paragraph 3 of the Arbitration Provision, which says, "Any party to a dispute . . . may send the other party written notice by certified mail return receipt

requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed." Counsel then asserted that because neither party had sent the other notice of an intent to arbitrate, the court "ha[d] jurisdiction and should consider the lawsuit."

¶10    The court acknowledged paragraph 3 but explained:

> Well, I think you need to read it all together as one document and not just selectively pull out Paragraph 3. Paragraph 3 is embedded within the entire section that says, "Waiver of jury trial and arbitration provision." It goes on and has several paragraphs that talk[] about what's being waived . . . .
>
> . . . [A] lot of contracts include options, right? Where parties can elect to arbitrate. I don't see where there's any other option here. . . . All I see is that there's . . . a waiver of jury trial [and] every dispute is going to be arbitrated. That's what I see here.
>
> So that's why I'm saying that that's the way I read it. . . . [I]t doesn't mean that I'm right.

Counsel responded that there was "[no] evidence of any dispute" and demanded: "[T]ell me about the dispute between the parties. Where is there a dispute between the parties?"

¶11    The court reminded Counsel that the court and Counsel "are not adversaries" and said: "I'm just telling you . . . how I read your contract and why I'm not today going to grant your motion for summary judgment. I'll leave it open. You can provide me with some additional information to support your argument that this is not a mandatory arbitration provision."

¶12     Counsel then said:

> I'm sensing that you are an advocate and that you are advocating a position, and I don't feel that I've got a neutral deciding this case. . . . I'd love to have a judge, and I'd love for you to be arguing the case and creating a brief arguing that that's what it means. But I don't know how to . . . be a lawyer representing a client with you coming up with an interpretation of this contract that I've never had another attorney come up with in probably a thousand cases.
>
>                . . . [T]his appears to be you're taking a side.

¶13     The court replied that it was "not electing arbitration" and "not being an advocate." It then went on, saying: "I'm not denying your motion for summary judgment. I've [told] you why I have a question. I've tried to explain it to you, and I'm giving you an opportunity to provide me with information that supports your position." The court then reiterated that its "job [was] to make sure that [Duke was] entitled to judgment as a matter of law."

¶14     Counsel then asked: "[W]hat's the brief that I'm writing against? What's the argument I'm writing against? . . . What's the question I'm trying to address?" And the court explained:

> The question that you have to address is whether or not this [c]ourt has jurisdiction, because I stated that it appears that [the Note] contains a provision where the parties have . . . agreed to waive their right to a jury trial and have agreed to arbitration in advance to resolve all disputes. That is what the contract language appears to me [to say]. So I'm questioning whether or not this [c]ourt has jurisdiction to resolve the dispute, because the parties have already decided a different forum would do that . . . . That's

the question. So it's a supplemental brief to support your argument that [arbitration] is not mandatory and that this [c]ourt has jurisdiction.

¶15 Duke filed a supplemental brief, arguing that "mandatory arbitration provisions relate to venue not jurisdiction" and that "it is inappropriate for a court to raise, *sua sponte*, an issue of venue." In support of this argument, Duke cited three cases from the United States Court of Appeals for the Seventh Circuit. Duke then concluded by declaring that "[i]t is a usurpation of power for the [c]ourt to interject itself, uninvited, into a question of venue" and that the court "should grant [Duke's] Motion for Summary Judgment, without further court instigated irregularities."

¶16 The district court denied Duke's motion and dismissed the case "for lack of subject matter jurisdiction." The court anchored its decision in "the plain language" of the Arbitration Provision. It read the Arbitration Provision as "requir[ing] the parties to submit their claims to a small claims tribunal and/or binding arbitration," and it concluded that the court could not exercise jurisdiction and thereby "allow[] some parties to avoid the terms of a contract that they themselves drafted." The court also admonished Counsel for engaging in "conduct unbecoming [the legal] profession" by challenging the court's integrity, declaring that the court was usurping power, and asserting that the court was instigating irregular delays. Duke appeals.

ISSUES AND STANDARDS OF REVIEW

¶17 Duke first argues that the Arbitration Provision did not divest the district court of jurisdiction over Duke's breach-of-contract claim. "Whether a court has subject matter jurisdiction is a question of law, which we review for correctness, granting no deference to the district court." *State v. Stone*, 2013 UT App 148, ¶ 4, 305 P.3d 167 (cleaned up).

¶18 Duke next argues that a district court should not be permitted to invoke an arbitration provision on its own motion. We review de novo the legal question of whether a district court may sua sponte invoke an arbitration agreement between the parties. *See Randolph v. State*, 2022 UT 34, ¶ 19, 515 P.3d 444 (holding that "abstract legal questions" are reviewed under "a non-deferential de novo standard" (cleaned up)).

¶19 Separately, Duke asserts that, in addition to the other reasons it gives for a rule prohibiting district courts from sua sponte invoking arbitration agreements, "[d]ue process concerns" require a rule that district courts may not sua sponte invoke an arbitration agreement. "Constitutional issues, including questions regarding due process, are questions of law that appellate courts review for correctness." *Valerios Corp. v. Macias*, 2015 UT App 4, ¶ 10, 342 P.3d 1127 (cleaned up).

¶20 Finally, Duke asserts that the district court erred by denying its motion for summary judgment. "We review a district court's denial of summary judgment de novo, affording its conclusions no deference." *Kay v. Barnes Bullets*, 2022 UT 3, ¶ 11, 506 P.3d 530.[1]

---

1. Duke also argues that Proctor waived the right to arbitrate when Proctor filed an answer that did not assert that right. Duke did not raise this issue below, however, and has therefore failed to preserve it for appeal. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 ("In order to preserve an issue for appeal, the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." (cleaned up)).

ANALYSIS

I. Subject-Matter Jurisdiction

¶21 Duke first argues that the Arbitration Provision did not divest the district court of subject-matter jurisdiction over Duke's breach-of-contract claim. We agree.

¶22 "The district court has original jurisdiction in all matters civil and criminal, not excepted in the Utah Constitution and not prohibited by law." *Johnson v. Johnson*, 2010 UT 28, ¶ 8, 234 P.3d 1100 (cleaned up); *see also* Utah Const. art. VIII, § 5 ("The district court shall have original jurisdiction in all matters except as limited by this constitution or by statute . . . ."); Utah Code § 78A-5-102(1) ("Except as otherwise provided by the Utah Constitution or by statute, the district court has original jurisdiction in all matters civil and criminal."). "Because subject-matter jurisdiction is 'special' and 'distinct' from other jurisdictional concepts," our supreme court has "cabin[ed] the issues that fall under the category of subject matter jurisdiction." *In re adoption of B.N.A.*, 2018 UT App 224, ¶ 13, 438 P.3d 10 (cleaned up). Specifically, it "has limited the concept of subject-matter jurisdiction to two specific situations: (a) statutory limits on the authority of the court to adjudicate a class of cases, and (b) timing and other limits on the justiciability of the proceedings before the court (such as standing, ripeness, and mootness)." *Id.* ¶ 14 (cleaned up). Neither of these situations is present here.

¶23 As to the first situation, statutory limits on jurisdiction, we note that "[o]ur law has long assessed subject-matter jurisdiction at the categorical level," meaning that what matters are any "statutory limits on the classes of cases to be decided." *In re adoption of B.B.*, 2017 UT 59, ¶ 153, 417 P.3d 1; *see also Kramer v. Pixton*, 268 P. 1029, 1031 (Utah 1928) ("In determining the jurisdiction of a court the test is not whether the court has jurisdiction of a particular case, but rather whether the court has jurisdiction of the class of cases to which the particular case

belongs."). This is a breach-of-contract case involving a contract with an arbitration provision. We have not found, and the district court did not identify, any statute that excepts either breach-of-contract cases generally or breach-of-contract cases involving arbitration agreements specifically from the district court's jurisdiction.

¶24    As to the second situation, timing and other limits on justiciability, the existence of an arbitration agreement simply is not among the "traditional limits on justiciability," "such as standing, ripeness, and mootness." *In re adoption of B.B.*, 2017 UT 59, ¶¶ 121, 153.

¶25    Stated another way, just as "parties cannot create, by contract, jurisdiction that would not otherwise exist," *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence*, 22 F.4th 892, 907 n.15 (10th Cir. 2022); *see also Hardy v. Meadows*, 264 P. 968, 972 (Utah 1928) (relying on the "familiar doctrine that subject-matter jurisdiction of a cause may not be conferred by consent"), parties cannot avoid or extinguish by contract a court's subject-matter jurisdiction established through constitutional or statutory pronouncement, *cf. Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 666 (10th Cir. 2020) ("[W]hen Congress grants subject matter jurisdiction, no other entity—not the litigants and not the states—can divest a federal court of the same.").

¶26    Hence, instead of being a mechanism to divest a court of jurisdiction, "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). "Forum-selection clauses . . . historically [were] not . . . favored by American courts," partly because of the view that "their effect was to 'oust the jurisdiction' of the court." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972). However, in *Bremen*, the United States Supreme Court upheld the validity of a forum-selection clause and a federal district court's jurisdiction to enforce it, observing that "[t]he argument that such clauses [were] improper

because they tend to 'oust' a court of jurisdiction [was] hardly more than a vestigial legal fiction" and that "[n]o one seriously contend[ed] . . . that the forum-selection clause [in that case] 'ousted' the [d]istrict [c]ourt of jurisdiction." *Id.* at 12. Then in *Prows v. Pinpoint Retail Systems, Inc.*, 868 P.2d 809 (Utah 1993), citing *Bremen*, the Utah Supreme Court declared that "the [forum-selection clause] 'ouster theory' [had been] permanently laid to rest." *Id.* at 811. Thus, while a forum-selection clause—or, by extension, an arbitration agreement—may limit the extent to which a court may *exercise* its jurisdiction, it does not *divest* a court of jurisdiction. *See Bremen*, 407 U.S. at 12 (concluding, in the face of a forum-selection clause, not that "[t]he threshold question" was whether the court *had* jurisdiction but "whether that court *should have exercised* its jurisdiction . . . by specifically enforcing the forum clause" (emphasis added)).[2]

¶27    While *Bremen* illustrates that forum-selection clauses and, by extension, arbitration agreements do not divest courts of jurisdiction to *enforce* such agreements, the Utah Supreme Court's decision in *ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2010 UT

---

2. The district court noted that in *Energy Claims Ltd. v. Catalyst Investment Group Ltd.*, 2014 UT 13, 325 P.3d 70, the Utah Supreme Court said, "We have accepted the general principle that forum selection clauses are enforceable *and can limit a court's jurisdiction*." *Id.* ¶ 47 (emphasis added). But the supreme court immediately followed that statement with the observation that "[t]his principle was adopted in *Prows*," *id.*, the case acknowledging that the theory under which forum-selection clauses "'oust' a court . . . of jurisdiction" had been "permanently laid to rest," *Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809, 811 (Utah 1993) (cleaned up). Thus, to harmonize *Energy Claims* and *Prows*, we read the statement from *Energy Claims* that forum-selection clauses "can limit a court's jurisdiction" to mean that forum-selection clauses can limit a court's *exercise* of jurisdiction, not that they can *divest* a court of jurisdiction.

65, 245 P.3d 184, demonstrates that courts also retain jurisdiction *not to enforce* arbitration agreements in appropriate circumstances. In *ASC Utah*, the parties entered into a development contract that contained an arbitration provision. *Id.* ¶¶ 3, 8. They also entered into a lease agreement that incorporated the development contract. *Id.* ¶¶ 2, 4. After some time, each party believed the other was in breach of their agreements, and each filed suit. *Id.* ¶ 4. Their cases were consolidated, and for nearly three years, the parties engaged in litigation, including substantial discovery and motion practice. *Id.* ¶¶ 4–7. One of the parties then filed a motion to bring additional parties into the litigation. *Id.* ¶ 7. When that motion was denied, the party filed a motion to compel arbitration. *Id.* ¶ 8. The district court denied the motion to compel arbitration "on the grounds that [the party seeking arbitration] had waived any potential right to arbitration by participating in litigation to a point inconsistent with an intent to arbitrate and causing prejudice to [the other party] as a result." *Id.* ¶ 9.

¶28　On appeal, the party seeking arbitration argued that "section 78-31a-4 of the Utah Arbitration Act[3] [was] mandatory and jurisdictional, leaving the district court without authority" to do anything other than order arbitration. *Id.* ¶ 14 (footnote omitted). Section 78-31a-4(1) said, "The court, upon motion of any party showing the existence of an arbitration agreement, shall order the parties to arbitrate." Utah Code § 78-31a-4(1) (2002). The supreme court observed that to conclude that this provision was mandatory and jurisdictional would "not account for other language contained in [the same] section." *ASC Utah*, 2010 UT 65, ¶ 15. Specifically, the court noted that section 78-31a-4 also said that "'[r]efusal to issue an order to arbitrate may not be grounded on a claim that an issue subject to arbitration lacks merit, or that

---

3. The Utah Arbitration Act has since been repealed, and the Utah Uniform Arbitration Act has been enacted in its place. *See* Utah Code §§ 78B-11-101 to -131.

fault or grounds for the claim have not been shown.'" *Id.* ¶ 16 (quoting Utah Code § 78-31a-4(4) (2002)). It then explained:

> It would not have been necessary to specify these two prohibited grounds for refusing arbitration if the legislature intended to prohibit the court from refusing to issue an order to arbitrate under any circumstances. Had the legislature intended section 78-31a-4 to be a mandatory and jurisdictional provision, it could have specified that courts must issue orders to arbitrate under all circumstances . . . . Instead, by providing specific guidance on the two narrow grounds upon which a refusal to issue an order to arbitrate should not be based, the text of the statute makes it clear that the legislature did not intend to limit the court's jurisdiction to refuse to issue orders to arbitrate on other grounds, such as when a party has waived its right to arbitrate.

*Id.* In other words, although the Utah Arbitration Act contained provisions limiting the district court's ability to exercise its jurisdiction under some circumstances—for example, when a party who had not waived arbitration demonstrated the existence of an arbitration agreement and requested arbitration—the act did not divest the court of jurisdiction or prevent it from exercising that jurisdiction when appropriate.

¶29 The current Utah Uniform Arbitration Act (the UUAA) is similar to the prior Utah Arbitration Act in relevant respects. Much like the prior act, the current act says that the district court "shall order the parties to arbitrate" upon a "motion of a person showing an agreement to arbitrate," if the other party refuses to arbitrate and "does not appear or does not oppose the motion." Utah Code § 78B-11-108(1). And just like the prior act, the current act says that the district court "may not refuse to order arbitration because the claim subject to arbitration lacks merit or grounds for the claim have not been established." *Id.* § 78B-11-108(4). Thus,

under the reasoning of *ASC Utah*, the current UUAA does not divest the district court of jurisdiction, even though it limits the scenarios under which the district court may exercise its jurisdiction when the parties have an enforceable arbitration agreement.

¶30　In sum, because there is no statute that excepts breach-of-contract cases—even those involving arbitration agreements—from the district court's jurisdiction; because the existence of an arbitration agreement is not among the traditional limits on justiciability; and because an arbitration agreement is, in essence, a specialized type of forum-selection clause and forum-selection clauses do not divest courts of jurisdiction, the district court erred by concluding that it did not have jurisdiction here.

### II. Sua Sponte Enforcement of the Arbitration Provision

¶31　Duke next argues that the district court may not invoke an arbitration agreement on its own motion. Again, we agree.

¶32　The Arbitration Provision provides that it is "made pursuant to a transaction involving interstate commerce and shall be governed by the [Federal Arbitration Act (the FAA)]." We are thus first confronted with the question of whether federal law or Utah law governs the procedural issue of whether a district court may sua sponte invoke an arbitration agreement.[4] *See Zions Mgmt. Services v. Record*, 2013 UT 36, ¶¶ 14–19, 305 P.3d 1062 (applying Utah law to answer one procedural question and the FAA to answer another in a case where the parties' arbitration agreement said that it was to be governed by the FAA). We need not decide whether Utah law or federal law applies, however, since the result is the same under both.

---

4. A rule that "prescribes the manner and means of raising a particular issue in court proceedings" is "quintessentially procedural." *State v. Rettig*, 2017 UT 83, ¶ 58, 416 P.3d 520.

¶33    The UUAA directs that an order to arbitrate shall be made "[*o*]*n motion* of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate." Utah Code § 78B-11-108(1) (emphasis added). The UUAA also provides that parties to an arbitration agreement may waive the requirements of the Act, except for, among other provisions, the foregoing requirement to seek arbitration by filing a motion. *See id.* § 78B-11-105. And case law interpreting the Utah Arbitration Act (predecessor to the UUAA) holds that an arbitration agreement may be waived by the parties. *See ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2010 UT 65, ¶¶ 14–21, 245 P.3d 184. These considerations all lead to the conclusion that under Utah law, a district court may not invoke an arbitration agreement on its own motion.[5]

¶34    Similarly, the FAA directs that if suit is filed on "any issue referable to arbitration under an [arbitration] agreement," the court "shall *on application of one of the parties* stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3 (emphasis added). Additionally, the United States Supreme Court has explained that the "[Federal Arbitration] Act, after all, does not mandate the arbitration of all claims, but merely the enforcement—*upon the motion of one of the parties*—of privately negotiated arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985) (emphasis added). And several federal courts—including the Seventh Circuit, as cited by Duke—have held that district courts may not enforce arbitration clauses sua sponte. *See, e.g., Automobile Mechs. Local 701 Welfare & Pension*

---

5. Like Utah, Oklahoma has adopted a version of the Uniform Arbitration Act, and the Oklahoma Court of Civil Appeals has held that under Oklahoma's version of the act, a trial court may not invoke an arbitration agreement sua sponte. *See Conn Appliances Inc. v. Powers*, 2018 OK CIV APP 25, ¶ 6, 417 P.3d 390. We find persuasive much of that court's reasoning and largely mirror it here.

*Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746–47 (7th Cir. 2007); *Wren v. Sletten Constr. Co.*, 654 F.2d 529, 536–37 (9th Cir. 1981); *Amiron Dev. Corp. v. Sytner*, No. 12-CV-3036(JS)(ETB), 2013 WL 1332725, at *3 (E.D.N.Y. Mar. 29, 2013); *Lopardo v. Lehman Bros., Inc.*, 548 F. Supp. 2d 450, 457 (N.D. Ohio 2008). For these reasons, we conclude that federal law also precludes a district court from invoking an arbitration agreement on its own motion.

¶35   Because under both Utah and federal law a district court may not sua sponte invoke an arbitration agreement, it was error for the district court in this case to do just that.

### III. Due Process and Professionalism

¶36   Duke also argues that, in addition to the reasons outlined above, "[d]ue process concerns" require the rule that a district court may not invoke an arbitration agreement sua sponte. Without such a rule, Duke asserts, courts would be allowed to unconstitutionally abandon their proper role as neutral arbiters. Duke believes this case is illustrative in that, in Duke's view, the district court here abandoned its proper role as neutral arbiter when it sua sponte identified and ruled on what it thought was a jurisdictional issue in Duke's summary judgment motion.[6] Because, as we have explained, there are other reasons for the rule that a district court may not sua sponte invoke an arbitration agreement, we do not decide whether due process concerns also require that rule. *See State v. Goins*, 2017 UT 61, ¶ 24, 423 P.3d 1236 ("[J]udicial restraint counsels against reaching constitutional questions if we can resolve the case on non-constitutional grounds.").

---

6. Duke asserts that it was actually "denied due process" by the district court's actions, but it seeks no relief on that basis, other than a holding that district courts may not invoke arbitration agreements sua sponte.

¶37 We observe, however, that "subject matter jurisdiction is an issue that can and should be addressed sua sponte when jurisdiction is questionable." *Petersen v. Utah Board of Pardons*, 907 P.2d 1148, 1151 (Utah 1995). Thus, although the district court ultimately reached an erroneous conclusion regarding subject-matter jurisdiction, it did not act inappropriately by raising the issue when it deemed jurisdiction to be in question. Of course, "if [a] court is inclined to dismiss sua sponte, it must afford the plaintiff an opportunity to be heard and to persuade the court that dismissal is not proper." *Miller v. Miller*, 2020 UT App 171, ¶ 39, 480 P.3d 341 (cleaned up). But that is exactly what the court did when it waited to rule on the jurisdictional issue until after affording Duke an opportunity to address it at oral argument and through supplemental briefing.

¶38 We also note that rule 56 of the Utah Rules of Civil Procedure "requir[es] independent judicial review of unopposed summary judgment papers." *Tronson v. Eagar*, 2019 UT App 212, ¶ 17 n.6, 457 P.3d 407. Inherent in this requirement is the possibility that a court will identify, raise, and rule on an issue not raised by the moving party but which might have been argued by the nonmoving party had that party chosen to respond. While a court should not become "an advocate for either side" and is not "obligated to scour the record to come up with arguments or theories that the nonmoving party had an opportunity to raise but did not," *Turley v. Childs*, 2022 UT App 85, ¶ 32, 515 P.3d 942, we decline to label as improper advocacy a court's raising of and ruling (even erroneously) on an issue that is apparent on the face of the moving party's papers and that could have been argued in good faith by the nonmoving party. That is all the court did here.

¶39 Duke also takes issue with the district court's designation of some of Counsel's comments as "unprofessional." In *Segota v. Young 180 Co.*, 2020 UT App 105, 470 P.3d 479, toward the end of a motion hearing, the district court "expressed its displeasure with a statement [the plaintiff's] counsel [had] made in the

memoranda opposing the defendants' . . . motions, where counsel characterized the motions as 'feckless.'"[7] *Id.* ¶ 8 n.1. "The court brought up the references on its own, . . . told counsel to 'remember to always be courteous,' and expressed its view that it was discourteous 'to refer to opposing counsel's arguments as 'feckless.'" *Id.* "On appeal, [the plaintiff] argue[d] that the court's sua sponte expression of disapproval of counsel's word choice indicate[d] that the court was biased against her or her attorney." *Id.* We disagreed and explained:

> A judge's behavior toward a party during court proceedings must be extreme to warrant a finding of bias or prejudice on the part of the judge. The district court's mild admonition of [the plaintiff's] attorney fell far short of this standard. We find nothing at all improper with the court's effort to encourage civility and professionalism, and certainly do not interpret the court's actions as indicative of bias.

*Id.* (cleaned up).

¶40　Counsel here was at least as deserving of encouragement toward civility as was counsel in *Segota*. During the summary judgment hearing, Counsel said to the court, among other things:

> I'd love to have a judge . . . . I don't know how to . . . be a lawyer representing a client with you coming up with an interpretation of this contract that I've never had another attorney come up with . . . .
>
> 　. . . [T]his appears to be you're taking a side.

---

7. "Feckless" can mean "worthless" or "irresponsible." *Feckless*, Merriam-Webster, https://www.merriam-webster.com/dictionary/feckless [https://perma.cc/E2NF-VQXW].

Duke insists that expression of these sentiments was appropriate because they amounted to merely "a description of what [Counsel was] feeling during the hearing" and, "[g]iven what [was] actually occurring in the hearing, [Counsel's] feelings as expressed . . . [were] within the bounds of professionalism." We are not convinced. There are more than a few feelings a lawyer might have during litigation that ought not to be expressed, especially in a courtroom, precisely because their expression would be unprofessional. Here, Counsel's expression of feelings of judicial bias was unprofessional where the only apparent basis for them was the court's identification of a legal concern, coupled with its invitation for Counsel to address that concern. *See* Utah R. Jud. Admin. 14-301(3) ("Lawyers shall not, without an adequate factual basis, attribute to . . . the court improper motives, purpose, or conduct.").

¶41    In Duke's supplemental brief, Counsel also declared that the court was "usurp[ing] . . . power" and that it should grant Duke's motion "without further court instigated irregularities." To "usurp" means "to seize and hold . . . by force or without right." *Usurp*, Merriam-Webster, https://www.merriam-webster.com/dictionary/usurp [https://perma.cc/N5YP-MVMG]. And "instigate" "often connotes underhandedness or evil intention." *Instigate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/instigate [https://perma.cc/62D4-NSU5]. Except in circumstances clearly not present here, it is also unprofessional to accuse a court, even obliquely, of evil intent, underhandedness, or seizing power without right. *See* Utah R. Jud. Admin. 14-301(3).

¶42    Duke contends that the foregoing statements from its supplemental brief are not unprofessional because they are "the type of advocacy statement[s] made by lawyers in written briefs." Duke is mistaken; briefs rarely contain emotionally charged language of accusation and reproof directed at the court. Counsel's arguments could have been appropriately—and at least

as effectively—framed simply as assertions that the court's contemplated action would constitute "legal error."[8] Accordingly, as with the admonition to counsel in *Segota*, "[w]e find nothing at all improper with the [district] court's effort [here] to encourage civility and professionalism." 2020 UT App 105, ¶ 8 n.1.

## IV. Summary Judgment

¶43 Finally, when the district court dismissed this case for lack of subject-matter jurisdiction, it also denied Duke's motion for summary judgment. Duke contends that the court erred when it denied the motion for summary judgment. And again, we agree.

¶44 Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). As "the moving party with the burden of proof at trial," Duke was required to show that it "established each element of [its] claim as part of demonstrating entitlement to judgment as a matter of law." *Phillips v. Skabelund*, 2021 UT App 2, ¶ 22, 482 P.3d 237, *cert. denied*, 496 P.3d 713 (Utah 2021).

¶45 Duke's claim is for breach of contract. "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *America West Bank Members, LC v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224 (cleaned up).

---

8. In fact, in most of the supplemental brief, Counsel did frame his argument, which was ultimately correct, in appropriate terms, for example, by asserting without equivocation: "The court has, on its own motion, raised an issue of 'jurisdiction,' when in fact, mandatory arbitration provisions relate to venue not jurisdiction. Further, it is inappropriate for a court to raise, *sua sponte*, an issue of venue." This is professional and zealous advocacy that needs no attempt at amplification through unprofessional assertions like those addressed above.

Duke's summary judgment papers include evidence supporting each element of its claim, specifically, that Proctor executed the Note in favor of LoanMe; that LoanMe loaned Proctor $5,400; that Proctor breached the agreement memorialized in the Note by failing to make the required monthly payments; that Duke purchased LoanMe's rights under the Note; and that as of October 14, 2020, Proctor owed $5,950.66 on the Note.

¶46　Proctor failed to respond to Duke's motion. "When a nonmovant fails to respond to a summary judgment motion, '[e]ach material fact set forth in the motion . . . is deemed admitted for the purposes of the motion.'" *Turley v. Childs*, 2022 UT App 85, ¶ 26, 515 P.3d 942 (alteration and omission in original) (quoting Utah R. Civ. P. 56(a)(4)). Thus, under applicable law and the undisputed material facts, Duke is entitled to judgment as a matter of law, and the district court erred by denying the motion.

CONCLUSION

¶47　The existence of an arbitration provision in a contract does not divest a court of jurisdiction, and the district court erred by concluding otherwise. Additionally, a court may not invoke an arbitration agreement sua sponte, and the district court erred by sua sponte invoking the Arbitration Provision here. Finally, under the undisputed material facts, Duke is entitled to judgment as a matter of law, and the district court thus erred by denying Duke's summary judgment motion. Although the district court erred in these respects, it did not usurp power, instigate irregularities, or engage in improper conduct, and Counsel should not have suggested that it did. We reverse, remand, and instruct the district court to enter judgment in favor of Duke in the amount of $5,950.66 plus costs.

_____